## Adonijah E. Upton v. James Kennedy.

*Constitutional law: Legislative authority.* It is a sound rule of policy, no less than of courtesy, that a court shall abstain from questioning the validity of legislation until it becomes absolutely necessary in the decision of a pending controversy.

*Special finding: Conclusion of law: Finding of facts.* Where a case rests upon exceptions to conclusions of law in a special finding, the exceptions must stand or fall by the finding of facts.

*Tax-titles: Finding of facts: Construction: Excessive levy.* A finding upon the validity of tax conveyances, which shows that the sum of sixteen hundred and sixty-three dollars and thirty-seven cents, for county taxes, and five hundred dollars for township contingent fund, were duly authorized to be raised, and which further finds "that one thousand dollars was raised on the roll of said township" for the year in question, but fails to state for what, is held to be open to the construction that the town raised less money than was authorized, instead of more.

*Taxation: Township taxes: Lawfully voted: Board of supervisors: Certificate.* Where a sum of money has been lawfully voted to be raised by taxation for township purposes, the failure of the board of supervisors to direct its levy would not invalidate the action of the supervisor in spreading it upon his roll.

*Township expenses: Finding of facts: Excessive levy.* The term "township expenses" is usually applied to the ordinary expenses of township government, and as commonly used would not cover many sums which it

UPTON v. KENNEDY.

might be proper and even necessary that the township should raise for local purposes, as, for instance, school taxes, the mill tax for school purposes, or a tax to pay a judgment against the township; so that a finding that one thousand dollars of township taxes had been levied, and that five hundred dollars had been voted as a contingent fund, and that there was "no other record of any further sum being raised for *township expenses*" does not necessarily show that the levy was excessive.

*Return of township collector: Signature: Verification.* A return of the township collector, of the failure to pay the taxes, which is neither signed by him nor verified by his oath, is held to be unofficial and of no legal value.

*Tax deeds: Statute construed: Sales: Return.* It is too broad a construction to put upon the statute (*Comp. L. 1871*, § *1129*) to hold that wherever a deed appears to have been given for taxes some portion of which were legal and are not shown to have been paid or otherwise discharged, the title under the deed must be upheld. Some things . besides a deed must necessarily be assumed as having been within the implications of the legislative requirement. The sale, to be upheld, must be understood to be a sale made as required by law, and effectuated by such a deed as the law contemplates. And there must be a lawful return to support the statutory sale and conveyance.

*Tax deeds: Sales: Return: Statute construed.* The real purport and effect of this statute is, that the sale shall not be void because one of several taxes is illegal, or has been discharged, nor because a return cannot be found in the proper office, unless it is shown the return never existed.

*Taxation: Statute construed: Sales: Return.* The purposes had in view by this legislation were: (1) To provide that no error or irregularity in mere matter of form should invalidate a tax proceeding; (2) To do away with the legal rule which the decisions had previously established, that a sale for several taxes, one of which was illegal or had been paid, should be void; and (3) To abolish the rule that when a record was not to be found in the proper office it must be accounted for before it can be assumed that it ever existed. For the first purpose the statute was not necessary, but the other two could not be accomplished without legislation.

*Taxation: Tax deeds: Return: Constitutional questions.* The return of the township collector having been shown in this case to have been a mere nullity, the question argued by counsel, of the constitutional power in the legislature to make a tax deed conclusive evidence of title, where it appears to have been given on a sale of lands for taxes, some of which were valid and had never been paid or in any manner discharged, is not necessarily involved, and is therefore not considered.

*Heard April 3.        Decided April 17.*

Error to Osceola Circuit.

*Gray & Luton,* for plaintiff in error, argued that the tax deeds for 1869 were void, for the reason that a town tax of one thousand dollars was raised, when only the sum of five hundred dollars was authorized to be spread upon the roll for the year 1869, as shown by the records of the township: *Case v. Dean, 16 Mich., 12; Lacey v. Davis, 4 Mich., 140;* and that the tax

deeds for 1870 and 1871 were void, because the returns of the town treasurers for those years were not signed or sworn to, as required by the statute: *Sess. L. 1869, Act No. 169*, § *55;* and because there is no official evidence on file in the county treasurer's office that the taxes for those years had not been paid on the lands in question: *Sharp v. Johnson, 4 Hill, 92; Thatcher v. Powell, 6 Wheat., 119; Callerton v. Douglass, 17 Ind., 213;* and that *section 164* of said act does not preclude the plaintiff from showing said deeds to be void: *Hart v. Henderson, 17 Mich., 218; Moser v. White, 29 Mich., 59; Millekin v. Benedict, 8 Penn. St., 169; Com. Bank v. Woodside, 14 Penn. St., 404;* that without a sworn return by the town treasurer, the county treasurer lacked jurisdiction to sell said lands.

*Wells & Morse*, for defendant in error.

Under the statute (*Comp. L. 1871*, § *1129*) unless a showing was made that the county tax was illegal, there could be no attack upon the tax deeds for errors in the other taxes, without a showing that the county tax, being legal, had been tendered to the proper officers; and no such showing was made. These taxes are wholly distinct in their object, destination and amount, from the others: *29 Mich., 247.* There was no difficulty in the way of the plaintiff tendering these legal taxes to the proper officers, and we claim that without it the tax-titles could not be invalidated for any cause. See *15 Mich., 257; 16 Mich., 176; 24 Mich., 170.* The statute in Wisconsin requiring a deposit of the amount of the taxes due before the title could be attacked, it was held in *Wakely v. Nicholas, 16 Wis., 593*, that this was a competent provision. See also *19 Wis., 620.* For decisions under a similar statute in Iowa, see *Eldredge v. Kuehl, 17 Iowa, 172; Parker v. Sexton, 29 Iowa, 423; Hurley v. Powell, 31 Iowa, 64; Rhodes v. Sexton, 33 Iowa, 540;* and see *Cooley on Taxation, 373.*

Plaintiff in error is bound by the facts found, and can raise no question on any fact not found. The want of a certificate from the clerk of the board of supervisors would not invalidate any taxes lawfully voted for township purposes: *Robbins v. Barron, 33 Mich., 124.*

The presumption under the statute would be, even though no return of the town treasurer could now be found, that it had been duly made and attached to the roll; it would be only a formal matter, not affecting the merits, and therefore could not render the tax deeds invalid under the statute: *Comp. L. 1871*, § *1129; 26 Mich., 245; 19 Wis., 618.*

36 MICH.—28.

As to the validity of the provision of the statute making the tax deed conclusive evidence of title where any of the taxes were valid and had not been paid, they cited: *17 Wis.,* *565; 19 Wis., 615; 29 Iowa, 356; 37 Iowa, 93, 536; 32 Iowa,* *461; 31 Iowa, 125; 35 Iowa, 234, 505; 33 Iowa, 540; 38 Iowa,* *141; 13 S. & R., 360; 17 Penn. St., 420; 9 Ib., 270; 33 Me.,* *76; 18 Ohio, 400.*

COOLEY, CH. J:

Counsel in this case have argued a question of constitutional power in the legislature to make a tax-deed conclusive evidence of title where it appears to have been given on a sale of lands for taxes, some of which were valid and had never been paid or in any manner discharged. We are of opinion, however, that the question does not necessarily arise in this case; and we are not disposed to consider it as merely an abstract question. It is a sound rule of policy, no less than of courtesy, that a court shall abstain from questioning the validity of legislation until it becomes absolutely necessary in the decision of a pending controversy. When the necessity arises, the court must apply the law that controls the case, whether it be statute or constitution; but a conflict between the statute and the constitution is not to be inquired into until it is found to affect some interest involved in a suit or proceeding which the court is required to pass upon.

The controversy in this case involved the validity of tax conveyances for several parcels of lands, purporting to be made for the taxes of the years 1869, 1870 and 1871. The defendant claimed title under these conveyances. The case comes to us on a finding of facts by the circuit judge, and by this finding the exceptions to his conclusions of law must stand or fall.

As regards the taxes for the year 1869, the circuit judge finds as follows: "I find that the county clerk of Osceola county, immediately after the annual session of the board of supervisors of said county for the year 1869, delivered to the supervisor of the township of Hersey, in which town-

ship the lands described in the plaintiff's declaration are all situated, that year a certificate certifying under . *section 32 of act 169 of the Session Laws of 1869,* the amount of county taxes to be raised in said town for that year at the sum of sixteen hundred and sixty-three dollars and thirty-seven cents; township tax at five hundred dollars. No state taxes were raised in Osceola county that year, and that no school or highway taxes were certified by said clerk under the said section. I find by the records of the town board for the year 1869 of the said township of Hersey, that at the annual township meeting held April 5, 1869, the electors voted to raise $500 for a contingent fund; and I also find from the records of the board of supervisors at the annual session of 1869 that the said board voted that the township of Hersey be allowed to raise five hundred dollars for a contingent fund, and I find no other records of any further sum being raised for township expenses; and that one thousand dollars was raised on the roll of said township; and that the lands described in the said plaintiff's declaration were duly assessed for their proportion of said tax. I find no claim or proof offered or given of any irregularity in the county tax assessed and levied for said year 1869. I find no returns of overseers of highways for the year 1869 of road districts in said township of Hersey, in which the lands above described were located, now to be found in the office of the supervisor of said township."

These are all the facts which are found regarding the tax for 1869. It is to be regretted that they are not stated with a little more fullness and precision, and that on some points they are ambiguous. Thus, it is found "that one thousand dollars was raised on the roll of said township," but it is not stated for what. Now as the two sums of sixteen hundred and sixty-three dollars and thirty-seven cents and five hundred dollars were duly authorized to be raised, the finding is open to the construction that the town raised less money than was authorized, instead of more. Counsel on both sides, however, have assumed that the one thousand

·dollars were levied for some purpose to be accomplished within the township; and this we shall assume was the meaning of the circuit judge.

Treating this as a township levy, the defect in the plaintiff's case is, that it does not appear with sufficient certainty that the levy was unauthorized. The circuit judge finds that only five hundred dollars was certified by the clerk of the board of supervisors to the supervisor of the township as having been authorized for township purposes; but in *Robbins v. Barron, 33 Mich., 124*, it was decided that if a sum had been lawfully voted, the failure of the board of supervisors to direct its levy would not invalidate the action of the supervisor in spreading it upon his roll. The judge also finds that five hundred dollars was voted for township contingent expenses, and that he finds "no other record of any further sum being raised for township expenses." Now this term, "township expenses," is usually applied to the ordinary expenses of township government, and as commonly used would not cover many sums which it might be proper and even necessary that the township should raise for local purposes. As an illustration, school taxes would not be spoken of as taxes for township expenses, whether levied upon districts or upon the township at large; and a mill tax for school purposes was at this time required to be levied by the supervisor without any action of the township or township board directing it.—*Comp. L. 1857*, § 2350. The same might be true of a judgment against a township.—*Ibid.*, § 4917. But a tax to pay a judgment would hardly be considered a tax for "contingent expenses," or for "township expenses," and certainly would not be regarded as covered by a vote for those purposes so long as no vote for raising it is required. We are, therefore, of opinion that it does not sufficiently appear from the finding that an excessive levy was made.

The defect principally relied upon in the case of the tax-sales for 1870 and 1871 was that the township collector's return of the failure to pay the taxes was neither signed

by him nor verified by his oath. We think the counsel for the plaintiff is correct in the position that such a paper is unofficial and of no legal value. But the defendant relies upon § *1129 of the Compiled Laws of 1871,* which was in force at the time these taxes were assessed and sales made, and which reads as follows:

" (1129) SEC. 163. No general or special tax authorized to be raised by the laws of this state, and which shall be assessed upon any property in any township or ward within the state, shall be held illegal or invalid for want of any matter of form in any matter or thing not affecting the merits of the case, and which shall not prejudice the rights of the party assessed; nor shall any sale of property for non-payment of the taxes thereon be invalid unless it shall be made to appear that the legal taxes, costs and charges were tendered to the proper officers within the time limited by law for the payment of all such taxes; or, in case of the sale of real estate, unless it shall be made to appear that. all legal taxes assessed upon such real estate, together with all legal costs and charges thereon, were tendered to the officer authorized to receive such redemption money within the time limited by law for the redemption thereof; and all taxes assessed upon any property in this state shall be. presumed to be legally assessed until the contrary is affirm-. atively shown; and no sale of real estate for non-payment of the taxes thereon shall be rendered invalid by showing that any paper, certificate, return or affidavit required to be made and filed in any office is not found in the office where the same ought to be filed or found; but, until the contrary is proven, the presumption shall be, in all cases, that such certificate, paper, return or affidavit was made and filed in the proper office."

If we correctly apprehend the position of defendant's counsel, it is this: that under this section, wherever a deed appears to have been given for taxes some portion of which were legal and are not shown to have been paid or otherwise discharged, the title under the deed must be upheld,

But if this be the view taken of this section, it is certainly, too broad. Some things besides a deed must necessarily be assumed as having been within the implications of the legislative requirement. For instance, if the auditor general had given a deed not based on any sale whatever, it would probably be conceded that his action was wholly without jurisdiction and void, for it is only sales that the statute assumes to support. So the action of the county treasurer would be void if without authority of law he should assume to execute a tax conveyance. The sale, to be upheld, must therefore be understood to be a sale made as required by law, and effectuated by such a deed as the law contemplates. But we also think this section itself contemplates that there shall be a lawful return to support the statutory sale and conveyance.

If when the validity of a sale and conveyance is in question nothing could be considered beyond the legality of some one or more of the taxes and the fact of its remaining undischarged, it would be manifest that the compliance of the collector's return with the statute, or the fact of any return at all, would be wholly immaterial, since in that view of the statute, if all the taxes were unwarranted or had been discharged, the sale must in every instance fail, and if any one was legal and remained undischarged the sale must in every instance be sustained. But we think the legislature have very plainly shown by the language employed in this section that it was not their purpose to establish a rule so sweeping. When in the very provision by which they propose to strengthen tax-titles they establish a rule of evidence regarding certain preliminary steps leading to a sale, it must be assumed that the rule is not a mere idle and unnecessary one, but that it is established because in some contingencies it may have an important office to perform. But what office can a rule of presumption in favor of the existence of a return have to perform, when the validity of a tax sale is in question, unless the sale itself may depend upon it?

The statute says that no sale shall be rendered invalid

by showing that any paper, certificate, return or affidavit is not found in the office where it ought to be filed or found, but until the contrary is proved the presumption shall be that it was duly made and filed. What papers, certificates and affidavits were had in view, we need not inquire, but it is certain that the return was one, because that was mentioned; and the implication is conclusive that the validity of the sale was supposed to depend upon it. To hold otherwise would be to treat this provision as meaningless and idle. And this part of the section must necessarily in some degree qualify what precedes it. The sale shall not be void because one of several taxes is illegal or has been discharged, nor because a return cannot be found in the proper office, unless it is shown the return never existed. This is the effect of the provision.

A careful consideration of this section seems to us to render very clear the purposes had in view by the legislature, and they may be stated as follows: (1) To provide that no error or irregularity in mere matter of form shall invalidate a tax proceeding; (2) To do away with the legal rule which the decisions had previously established, that a sale for several taxes, one of which was illegal or had been paid, should be void.—*Lacey v. Davis, 4 Mich., 140; Case v. Dean, 16 Mich., 12;* and, (3), To abolish the rule that when a record is not to be found in the proper office it must be accounted for before it can be assumed that it ever existed.—*Hall v. Kellogg, 16 Mich., 135.* For the first purpose the statute was not necessary, but the other two could not be accomplished without legislation.

In this view of the statute we are relieved from any consideration of the constitutional question, because there is testimony regarding the return, and it is shown to have been no return at all. The titles for 1870 and 1871 are therefore proved to be invalid. But as the tax conveyance for 1869 is not affirmatively shown to have been unwarranted, and that alone would be sufficient to support the judg-

ment, the judgment must be affirmed, with costs.   The record will be remanded for further proceedings under the statute.

The other Justices concurred.