HENRY STOCKLE ET AL. v. AMANDA SILSBEE.

*Tax titles.*

Irregularities in assessment do not defeat a tax if they do not prejudice the person taxed.

A tax-title is not invalidated merely by the county treasurer's neglect to file his bond as collector of State and county taxes within the prescribed time, if it appears that he actually filed

his bond and received the tax roll and that his right to it had not been contested.

The lawful acts of a *de facto* tax collector as such are valid whether he was strictly entitled to the tax roll or not; and they cannot be collaterally attacked by contesting in an ejectment suit a tax-title based upon them.

A tax-title is not invalid merely because the original return from the township treasurer to the county treasurer had been sent to the capital instead of being retained in the county treasurer's office as it should have been.

The objection that an act, purporting by its title to relate to "laying out, altering and discontinuing highways," is invalid for including provisions for improving highways, an object not stated in the title, was *held* too technical after highway officers had acted under the statute for eighteen years during which its validity had not been questioned.

A finding that a highway commissioner's report to the township board "was not to be found" does not show that none had been made. Comp. L., § 1129.

A tax-deed is presumptively valid; its invalidity is not to be inferred from ambiguous facts or from any failure to find facts.

A bridge and highway tax is not to be presumed invalid for exceeding the percentage on the assessed valuation allowed by law, if it does not also appear that it was not authorized under Comp. L., § 477, subd. 15, by the board of supervisors.

The legal organization of a school district actually exercising its corporate powers, cannot be collaterally questioned in contesting a title based on a school-tax.

The action of a board of supervisors in voting money for a bridge or for county buildings is presumably lawful. Comp. L., § 477, subd. 15.

A finding upon the validity of the taxes on which a title is based should distinguish such taxes as are so assessed by authority of law as to be a lien on the land, from those levies which are illegal, so that the court may determine such questions of lien as may be raised under Comp. L., § 1131.

Whatever presumptions support the existence of documentary evidence, the fact of its existence ought to be determined by the court wherever the testimony raises a question in its absence as to whether it ever did exist.

All inferences from testimony must be drawn by the trial court and not by the appellate court.

Error to Huron. Submitted July 2. Decided Oct. 14.

EJECTMENT. Defendants bring error.

*Winsor & Snover* and *H. B. Carpenter* for plaintiffs in error. A tax imposed by the board of supervisors to build bridges is presumably lawful, *Atty. Gen. v. Bay County Supervisors*, 34 Mich., 47; *Upton v. Kennedy*, 36 Mich., 215; *Hogelskamp v. Weeks*, 37 Mich., 423; Cooley on Taxation, 329; a tax is not made void by irregularities that prejudice no one, id., 199, 215, 216, 325, 327; *Case v. Dean*, 16 Mich., 39; *Wall v. Trumbull*, id., 228; *Lacey v. Davis*, 4 Mich., 140; State and county taxes must be paid or tendered if legal, and cannot be involved with illegal taxes, *Pillsbury v. Aud.· General*, 26 Mich., 247; *Merrill v. Aud. General*, 24 Mich., 170.

*H. H. Hoyt* for defendant in error.

COOLEY, J. This case was tried in the circuit court without a jury, and comes before us on a finding of facts. The question raised is whether the finding is sufficient to support the judgment.

The action was ejectment and Silsbee was plaintiff. She claimed the land under a patent by the United States, and it is not disputed that she made out a *prima facie* right. But this *prima facie* case was overcome by the defendants, who showed that they held the land under deeds given by the Auditor General on sales made thereof for delinquent taxes assessed in the years 1869, 1870, 1871 and 1872. On the case as it then stood the defendants were entitled to judgment, and it only remains to see whether the invalidity of these deeds was established.

The circuit judge seems to have found the deeds invalid on a showing which satisfied him that taxes were illegally assessed or illegally returned every year. In reviewing the case it is a little embarrassing not to find the defects which are supposed to be fatal pointed out, especially as the finding recites many irregularities, some of which are obviously trivial and unimportant, and unworthy of a moment's consideration. Possibly some of these may have seemed to the court fatal, but the

41 MICH.—78.

time has gone by, if it ever was, when the proceedings of taxing officers are to be criticised with microscopic nicety, and the exact time and method of every step examined to detect a departure from the law, however insignificant or unintentional. The policy of the law is that parties shall pay legal taxes even though there may be some irregularity in demanding them, and that they shall complain to the courts of those errors only which may injure them. The possibility of collecting the State revenue depends upon the observance of this policy, and we do not feel called upon to examine in detail every irregularity which a record may show. It is probable that in no tax case have all the proceedings been exactly and punctiliously correct, but they are sufficiently so for legal purposes in any case if no error is committed which can prejudice the person taxed. *Clark v. Crane*, 5 Mich., 151; *Smith v. Crittenden*, 16 Mich., 152; *Bird v. Perkins*, 33 Mich., 29. By this policy the several tax titles in question are to be tested, and in the light of it we shall examine such objections as seem important.

Taking up first the title for 1869, the finding of facts states that it is based *in part* upon State and county taxes returned as delinquent. It is not shown that any particular township, school or highway tax was among those for which the sale was made, and any one of them might have been separately paid. The validity of no one of them is therefore in question here. No objection is made to the State or county tax which can be considered plausible, and it only remains to see whether there was any fatal defect in the proceedings leading to the sale.

It is said that the township treasurer did not file with the county treasurer in due season his bond as collector of county and State taxes, and that on his failure to do so, it was the duty of the county treasurer to deliver the tax-roll, not to him but to the sheriff. Comp. L., § 1027. It is shown, however, that he filed

his bond, and that thereupon he received the tax-roll, and it does not appear that the sheriff ever contested his right to it. He was unquestionably collector *de facto*, if not *de jure*, and if any question of his right could exist, it could not be raised by these parties in this collateral way. His acts as collector are valid, whether in point of strict law he was entitled to the tax-roll or not. *Facey v. Fuller*, 13 Mich., 527; *Jhons v. People*, 25 Mich., 499; *Bird v. Perkins*, 33 Mich., 28.

The return made by the township treasurer to the county treasurer is also said to be insufficient. The defects are that it is not signed and sworn to by the township treasurer, nor certified by the county treasurer, as required by the statute. Comp. L., §§ 1019, 1020. But the circuit judge does not find the fact to be as alleged. The county treasurer's evidence tends to show that the return was completed in due form, but that the original was transmitted to Lansing instead of being retained in his own office as it should have been. This was irregular, but the mistake was a very harmless one.

We therefore discover in the finding no fatal defect in the sale for the taxes of 1869 indicated, and what has been said respecting it is equally true in respect to the sale for the taxes of 1870.

The sale for 1871 is found to have been made "for said State, county and other taxes." Although this is a little indefinite, it is perhaps to be understood as a statement that the sale was made for all the taxes mentioned in the finding as having been levied for that year. This would include township, highway and school taxes, as well as those levied for the State and county. For highway purposes taxes were voted by the town for the year as follows: Highway purposes without further specification, $200; to chop out road, $40; to build road, $20; for bridge over Pigeon river, $100; for bridge over Shebeon creek, $150. All these might have been legal, and the question is whether they are shown to be illegal.

The statute requires the commissioners of highways to render annually to the township board an account in writing of their doings for the year, stating therein the improvements necessary to be made on the roads and bridges and an estimate of the probable expense thereof beyond what the labor to be assessed in the year will accomplish. This account is to be presented at the next annual township meeting, and such meeting may vote for the raising of such sum, not exceeding $250, for the improvement of roads and bridges as a majority of the electors present shall deem necessary. Comp. L., § 1195. A subsequent statute changes the sum that may be voted to one-half of one per centum upon the aggregate valuation of the property in the township. Comp. L., § 1269. A question is made of the validity of this last provision, because it constitutes part of an act the scope of which is limited by its title to the "laying out, altering and discontinuing highways"; and it is said that improving highways does not come within these terms. But the highway officers of the State have been acting under this statute for eighteen years without any question having been made of its validity, and we are not disposed to listen to nice objections of this sort at this late day.

The objections to the sums voted for highway purposes are: *first*, that the highway commissioners made to the township board no report in writing such as the statute required; and *second*, that the vote was excessive. The first objection is not shown to be well founded. The judge finds that "there was no report to be found"; not that none was made. This is not sufficient to establish the negative. Comp. L., § 1129. The second seems to be well founded. The assessed valuation for the year was less than $43,000, and a half of one per centum of this was considerably below what the township undertook to raise.

But the sums voted for both highway and bridge purposes may possibly have been authorized by the board of supervisors under the authority given to that

body by Comp. L., § 477, subd. 15. If the fact was not so, it ought to have been negatived by the finding. We repeat here that the tax deed is presumed to be valid, and its invalidity is not to be inferred from ambiguous facts, or from any failure to find facts.

A school tax was also levied on the lands in dispute for the year 1871. In respect to this the finding states that "the records of the township were introduced in evidence, from which it appeared that there were attempts made to organize school districts, but the records thereof are informal and irregular, and not as required by law; and that no oath of office of any school inspector was recorded in the records of said township," * * * and that "there is no certificate on file in the supervisor's office from the director of the school district in which this land was supposed to be situated." From this finding it appears that the school records of the township are imperfect, and it may be inferred that no district was ever organized with regularity; but it does not appear that districts are not in existence and in the full exercise of corporate powers. If so, the legality of their organization cannot be questioned in this collateral manner. *Stuart v. School District*, 30 Mich., 69; *Fractional School District v. School Inspectors*, 27 Mich., 3; *Clement v. Everest*, 29 Mich., 19.

Nearly everything that is said respecting the taxes for 1871 will apply to those for 1872. Some of them may have been illegal, but they are not shown by this record to be so. The action of the board of supervisors in 1871, in voting $500 for a bridge in one of the townships is claimed to be illegal under the decision in *Attorney General v. Supervisors of Bay*, 34 Mich., 46. But the cases do not appear to be alike or similar. In that case the county undertook to raise moneys to be handed over to certain towns for the improvement of township roads. In this case the county was providing for the construction of a bridge by itself, whether upon township, county or State road we are not informed. Presumptively the

act was lawful. So also was the vote to raise $1,000, for county buildings in 1872. Comp. L., § 477, subd. 7.

The case must go back for a new trial, and when it takes place there should be such a finding as will enable the taxes which are assessed by authority of law so as to constitute a lien upon the land to be distinguished from those levies which are illegal if any are found to be so. This is necessary to enable the court to determine questions of lien that may be raised under section 1131 of the Compiled Laws.

The plaintiffs in error will recover the costs of this court.

MARSTON and GRAVES, JJ., concurred.

CAMPBELL, C. J. I think there has been a mis-trial, and that the finding is imperfect.

The necessity of having documentary evidence originally of most action under the tax laws, makes it imperative in the court trying a cause; whatever may be the presumptions of its existence, to determine that fact whenever the testimony in the absence of such documents raises a dispute as to whether they ever did exist or not. In the present case there are several taxes where that difficulty arose, and where the court below found evidence but did not distinctly find facts.

Among other defects it is not entirely clear whether the defendants presented different deeds for taxes of different years, or whether they were all in one deed. There is an entire absence of any description of this deed which would show whether it was for private or State bids, or which would enable us to determine just how far the statutory presumptions are supported by it.

All inferences from testimony must be drawn by the court below and not by us.

A new trial should be granted.