AMANDA SILSBEE v. HENRY STOCKLE ET AL.

*Tax titles.*

A township tax levy for highway purposes is properly included with the regular highway tax when spread upon the assessment rolls, and need not be placed in the column for township taxes.

Where a general levy for highway purposes exceeds five mills per cent. on the township valuation, it will defeat any tax sale made for an aggregate of taxes of which it forms a part.

The equalization of assessment rolls by the board of supervisors is not defeated by the fact that the report of equalization was not in writing and that there was no written resolution adopting it.

A board of supervisors in equalizing assessment rolls, determines whether the relative valuations of real property are disproportionate, and makes the necessary additions or deductions to or from the whole taxable property of the township.

A county tax is not defeated for want of proper action by the board of supervisors in determining the amount of money to be raised, where the record of the clerk of the board shows the acceptance of a report of the finance committee and the adoption of a resolution to raise the sums reported.

A township tax exceeding the amount voted by the township may be sustained on the presumption that the township board had exercised its statutory right to increase the amount, if there is no showing to the contrary.

Where the validity of a tax in aid of a county agricultural society depended on whether or not a certificate by its officers that the society had raised $100 for the year had been presented to the board of supervisors, and the county clerk could find no such certificate in his office, it was *held* presumable that the proper certificate had been presented, and that the presumption could not be rebutted by the testimony of a supervisor that he had no recollection whether it had been or not.

Omission to equalize the assessment rolls at the October session of the board of supervisors as required by Comp. L. § 993 did not defeat a tax where the same board had already made at its June session the equalization required every fifth year by Comp. L. § 303.

A surveyor's tax included in a levy is presumably lawful, as such a burden upon particular parcels of land is allowed in some cases to meet the cost of their survey. Comp. L. § 595.

A tax is invalid if the supervisor's certificate to the assessment roll, in stating that he has estimated the real estate set down therein at what

44 MICH—36

he believed to be the true cash value thereof, does not add in effect, "and not at the price it would sell for at a forced or auction sale."

The statutory provisions that no sale for delinquent taxes shall be held invalid unless it be made to appear that all legal taxes were paid or tendered, and that all taxes shall be presumed to be legally assessed until the contrary is affirmatively shown (Comp. L. § 1129) are unconstitutional so far as they sustain sales for taxes which are in part illegal.

It is a presumption of law that the land demanded for a delinquent tax bears some proportion to the sum to be paid, and that if the tax is in part illegal some portion of the land sold to pay it is taken to satisfy an illegal demand.

Tax sales are made in Michigan by the county treasurer, but in most cases he is in no way connected with irregularities; where he has received from the Auditor General a list of the lands with the charges upon them and has made the sale and accounted for the moneys to the authorities apparently entitled to them, he cannot be held liable for illegalities not chargeable to himself; and there can especially be no remedy against him where the lands are struck off to the State for want of bidders, for no money passes through his hands on State bids. The remedy, if any, is in following the illegal levy and finding the person, officer or municipality finally appropriating the money thereby obtained.

Penalties for the non-payment of taxes within a fixed time cannot lawfully exceed legal interest.

Error to Huron.   Submitted April 28.   Decided Nov. 10.

EJECTMENT.   Plaintiff brings error.   Reversed.

*H. H. Hoyt* for plaintiff in error.

*Winsor & Snover* and *H. B. Carpenter* for defendants in error.

COOLEY, J.   This case was once before in this court, and the opinion then given resulted in a new trial. *Stockle v Silsbee* 41 Mich. 615. It is ejectment to recover lands the original title to which is held by the plaintiff. The lands were returned for the non-payment of taxes of 1869, 1870, 1871 and 1872, and were bid in for the State in each of those years. Afterwards the State sold them, and defendants hold the State conveyance. The plaintiff claims that the tax levy

was void in each of the four years; and the controversy turns wholly upon this allegation. The land consists of one hundred and twenty acres lying in one body in the township of Fair Haven, Huron county. The objections to the tax levy are numerous, and some of them we think too plainly frivolous to require even a mention. The others are the following:

I. The highway tax for 1869 is said to have been excessive. The valuation of the land for that year was $180, and a highway tax of $3.15 was levied. The regular highway assessment is in labor, but this, when not performed, becomes a money tax, which under the statute cannot exceed one per cent. of the valuation. Comp. L. §§ 1228, 1241. But the township has authority to vote a general levy for highways; and this seems to have been done for the year in question, and the sum voted goes to make up the highway tax which the rolls show. It is objected that a tax thus voted constitutes a part of the township tax, and must appear in the column of township taxes on the roll. *Case v. Dean* 16 Mich. 12. We think, however, that the supervisor was correct in adding it to the other highway tax. Comp. L. § 1002.

Unfortunately, however, the township voted a larger sum than the statute permits. The authority is expressly limited to a sum not exceeding five mills per centum upon the aggregate valuation of the property in the township (Comp. L. § 1269); but the amount actually voted and levied exceeded eight and one-half mills per centum. This excess, under the previous decisions of this court, was sufficient to defeat any sale made for an aggregate of taxes of which this highway tax formed a part. *Lacey v. Davis* 4 Mich. 140; *Buell v. Irwin* 24 Mich. 145; *Wattles v. Lapeer* 40 Mich. 624.

II. The equalization of assessment rolls by the board of supervisors for the year 1869 is said to be defective, but the criticism made is altogether over-nice and technical. The record of the board shows that the committee on equalization made a report, to which was appended a tabular statement giving the names of the townships, the assessed valuation, the increase or decrease, if any was proposed, and the proposed equalized valuation. This report, the record shows, after an

alteration in respect to Fair Haven, "was accepted and adopted as the equalization of the county." The objection to this seems to be—*First*, that neither the report of the committee nor any resolution adopting it was in writing, and that there can be no sufficient record without it; and *second*, that the equalization was of real and personal property both, while under the statute the board are to judge of the relative valuations of real estate only. The first objection aims at matter of form only. It might perhaps be better if all reports and resolutions in deliberative bodies were made and offered in writing, but there is no law or custom requiring it. The second objection is equally baseless. The board, after determining whether the relative valuations of real property are disproportionate, are required to make the additions or deductions they find necessary to or from the whole taxable property of the township. Comp. L. § 993. That is what was done here.

III. It is further objected that there was no proper action of the Board of Supervisors determining the amount of money to be raised for county purposes. The record upon this subject is as follows: "Committee on finance submitted the following report, which on motion was accepted, and the resolution to raise the respective sums adopted: For State tax, $1980.27; poor fund, $400; contingent fund, $6261.68." Here again is no written resolution, but the clerk has taken down the substance of one submitted orally, and the record is as full and complete as is to be expected. There is no defect in matter of substance.

IV. In the levy for 1870 was included a township tax of $150. The township had voted only $125, and it is therefore claimed the levy was excessive. But the township board had a right to increase the sum voted when necessary (Comp. L., § 751); and it must be presumed in the absence of any showing to the contrary that they did so in this case. *Upton v. Kennedy* 36 Mich. 215; *Stockle v. Silsbee* 41 Mich. 615.

V. There was levied for the year 1870 a tax of one-tenth of a mill on the valuation, in aid of the County Agricultural

Society. The statute authorized such a tax only when the sworn certificate of the president and secretary of the society, that the society itself had raised for the year $100 or more, was presented to the supervisors. Comp. L., § 2163. When the trial took place the county clerk could find no such certificate in his office; and the plaintiff requested the court to submit to the jury the question whether one was ever made. This was refused. The presumption is that the proper certificate was presented. *Upton v. Kennedy* 36 Mich. 215; *Hogelskamp v. Weeks* 37 Mich. 422. The only evidence appearing in the record which could have been submitted to the jury as having a contrary tendency was that of a member of the Board of Supervisors for the year, who testified that he had no recollection whether a certificate was or was not presented. But this mere negative declaration was of no force, and there was nothing in it to go to the jury as tending to rebut the legal presumption that the action of the supervisors was based upon a proper certificate.

VI. For the year 1871 there was no equalization of the assessment rolls at the October session, as is required by Comp. L., § 993. It appears, however, that one was made by the board at its June session, as is required every fifth year by Comp. L., § 301. As the board is composed of the same persons in June and in October, and a new equalization would be an idle formality, we are not inclined to hold that a failure to go through with that formality in October is fatal.

VII. The warrant appended to the tax roll for 1871 indicates that a surveyors' tax of $13.53 was included in the levy; and for this it is claimed there was no authority of law. The statute, however, authorizes a levy to be made in some cases on particular parcels of land, to meet the cost of their survey; Comp. L., § 595; so that presumptively this tax may have been lawfully laid. There is no showing and no claim that any part of it was levied on the land in controversy.

VIII. The most serious defect which is pointed out in any of the proceedings, is found in the supervisor's certificate to the assessment roll for the years 1870, 1871 and 1872. Sec-

tion 991 of the Compiled Laws, under which these assessments were made, is as follows:    ·

"When the supervisor has reviewed and completed the assessment roll, it shall be his duty to attach thereto, signed by him, a certificate, which may be in the following form: 'I do hereby certify that I have set down in the above assessment roll, all the real estate in the township of ————, liable to be taxed, according to my best information, and that I have estimated the same at what I believe to be the true cash value thereof, and not the price it would sell for at a forced or auction sale; that the said assessment roll contains a true statement of the aggregate valuation of the taxable personal estate of each and every person named in said roll, and that I have estimated the same at the true cash value, as aforesaid, according to my best information and belief.'"

The form given in this section was followed by the supervisor, except that the words "and not at the price it would sell for at forced or auction sale" were omitted. As the circuit judge sustained the levy, he must have reached the conclusion that the observance of the statutory form was not compulsory.

The early statutory form did not contain the words which the supervisor has omitted (Comp. L. 1857, § 806), and the change in the form was made in a revision of the tax law in 1869. If the change in the form whereby these words were brought into it had no important purpose in view, we may well hold that the proceedings are not affected by the supervisor continuing the use of the form which had been in use before. But it is a matter of common knowledge that the change was made for the very purpose of effecting an important change in the assessments. It was notorious that supervisors had been in the practice of evading the previous law and making assessments at a mere fraction of the real value of the property, when sworn to make it at the cash value. It was very easy to excuse the evasion of duty under the pretense that the cash value of property was only what it would bring if forced upon the market; and the law was amended for the very purpose of taking away this excuse. It will not do to say that such an amendment is unimportant and there-

fore may be disregarded with impunity; it goes to the very essentials of the assessment, and was intended not only to control that, but also through that all the subsequent proceedings. There is not the slightest doubt the Legislature intended that the adoption of the form given, or one that should be equivalent in substance, should be compulsory in every instance. The failure to adopt it is, therefore, a fatal defect. *Clark v. Crane* 5 Mich. 151.

IX. It appears, then, that there was an excessive levy for the year 1869, and that for 1870, 1871 and 1872 there were no valid assessments and consequently no valid taxes. Under such circumstances it remains to be seen whether it is possible to support the deed under which the defendants claim. If so it must be supported upon the State bid for 1869. No defect was pointed out in the proceedings for that year with the single exception that the levy was excessive.

The reason for holding a tax sale void when the levy is excessive is that the sale is for the aggregate of all the taxes, so that the tax title is based as much on what is illegal as upon what is lawful. It is said, however, that this rule is changed by the existing tax law, whereby it is provided that no sale for delinquent taxes shall be held invalid unless it shall be made to appear that all legal taxes were paid or tendered; and further, that all taxes shall be presumed to be legally assessed until the contrary is affirmatively shown. Comp. L. § 1129.* Plaintiff contests the validity of this section, contending that when one's land is taken for a levy any portion of which is illegal, it is to that extent taken without due process of law. Defendants on the other hand affirm that the power to sell arises from the default in making

---

• * (1129) SEC. 163. "No general or special tax authorized to be raised by the laws of this State, and which shall be assessed upon any property in any township or ward within the State, shall be held illegal or invalid for want of any matter of form in any matter or thing not affecting the merits of the case, and which shall not prejudice the rights of the party assessed; nor shall any sale of property for non-payment of the taxes thereon be invalid unless it shall be made to appear that the legal taxes, costs, and charges were tendered to the proper officers within the time limited by law for the payment of all such taxes; or, in case of the sale of real estate, unless it shall be made to appear that all legal taxes assessed

payment of the legal taxes, and that the sale for these, being in due process of law, is not affected by the irregularity of including a sum not legally levied. This is the view that has been taken in Iowa. *Eldridge v. Kuehl* 27 Iowa 160 ; *Parker v. Sexton* 29 Iowa 421 ; *Rhodes v. Sexton* 33 Iowa 540.

We had occasion to take some notice of this statute in *Upton v. Kennedy* 36 Mich. 215. It was relied upon in that case in support of a sale based upon an illegal return ; but we were of opinion that it was not the purpose of the statute to render unimportant any of the proceedings which before were jurisdictional. As we found in that case that there was no return upon which any sale could be based, it did not become necessary to decide whether the statute would be effectual to support a sale when the only infirmity was the inclusion of an illegal levy among those which were legal in making up the aggregate sum for which sale was made. If it is within the competency of the Legislature to pass an act which shall have that effect, there is no doubt that it would prove exceedingly serviceable in the collection of the public revenues ; and if the State interest alone were in question it might be a politic and useful statute.

But the public convenience is ,to be subserved in all cases without disturbing the foundations of private security ; and we must see whether these are respected by the act under consideration. To determine this we must have in mind the method provided for enforcing tax liens upon land. That method is to add together all the taxes for the year, with the interest or penalty for delay, and expenses of advertising and sale, and then to sell sufficient of the land to pay the aggregate sum. The competition of bidders is directed to ·the .

---

upon such real estate, together with all legal costs and charges thereon, were tendered to the officer authorized to receive such redemption money, within the time limitéd by law for the redemption thereof; and all taxes assessed upon any property in this State shall be presumed to ·be legally assessed until the contrary is affirmatively shown; and no sale of real estate for non-payment of the taxes thereon shall be rendered invalid by showing that any paper, certificate, return, or affidavit required to be made and filed in any office is not found in the office where the same ought to be filed or found; but, until the contrary is proven, the presumption shall be, in all cases, that such certificate, paper, return, or affidavit was made and filed in the proper office."

quantity of land that will be accepted for the sum charged against the whole parcel taxed, and the lowest quantity which any one offers to take will be set off to him from the north end of the parcel. If therefore when only five dollars are lawfully due, ten dollars are charged, and the whole tract sold for the payment, it may well be said that the south moiety is unlawfully taken, because it is presumable that whoever would pay the whole sum for all the land would pay half the sum for half the land. No doubt there would be many cases in which this would not hold true; but no one could assume—certainly no court, as a foundation for legal judgment—that purchasers in bidding upon quantity would be wholly uninfluenced by the amount of the tax to be paid, and would demand the same quantity of land when a small sum was to be paid that they would if it were large. On the contrary there must be a legal presumption that the land demanded bears some proportion to the sum to be paid, and that when the amount is in part illegal, some portion of the land sold has gone to satisfy an illegal demand, and would not have been sold at all if only what was lawful had been called for.

It is said, however, that the illegality should not defeat the sale, because the power to sell sprung under the law from the delinquency in the payment of the legal tax, and the sale being made under lawful power, any irregularity or excess in its execution is not necessarily fatal, but may be cured, prospectively, or retrospectively, by legislation, as the statute in question attempts to do. But the lawful power is a power to sell so much only as is sufficient to pay such taxes as the law has authorized; and no attempt has been made to execute such a power here. It is not a case of mere excess in the execution of the power by the officer entrusted with it; for the sum to be demanded was so made up that he could not, if he would, have offered to sell for the legal tax alone; he must sell for the amount reported to him as due, and was powerless to confine the sale to the lawful tax and lawful charges, however willing he may have been to do so.

A plausible argument might be made in support of such a sale if the statute made suitable provision for a remedy in

behalf of the party whose land is thus appropriated. In Connecticut it has been held competent to provide by statute that execution sales shall not be held invalid by reason of the officer having charged excessive fees, and included the amount in the sum for which sale was made. *Beach v. Walker* 6 Conn. 197; *Booth v. Booth* 7 Conn. 350; *Welch v. Wadsworth* 30 Conn. 149. But the officer in such case would be liable to the party wronged by the extortion, and what the party lost in property would be recovered in money. It has not been suggested that in this State there would be any corresponding remedy against the county treasurer, who is the officer by whom tax sales are made. In most cases he is in no way connected with irregularities and can have no knowledge of them; he receives a list of lands with the charges upon them, makes the sale and accounts for the money to the authorities apparently entitled to them; and when he has done this, there is no ground for holding him liable for illegalities not chargeable to himself. *Dickins v. Jones* 6 Yerg. 483; *Lincoln v. Worcester* 8 Cush. 55; *Crutchfield v. Wood* 16 Ala. 702; *Abbott v. Yost* 2 Denio 86. And there certainly could be no remedy against him in a case where the lands were struck off to the State for the want of bidders, as was the case here; for no money passed through the treasurer's hands on State bids, and his connection with the case is limited to the entries he makes on his books, and to his returns to the Auditor-General. Upon these entries and returns no action could arise at the common law, and no statute has given one. The remedy, if any exists, must be found in following the illegal levy, and finding the person, officer or municipality by which the money obtained thereby was finally appropriated.

It is sometimes matter for serious regret that a court is compelled to declare a sale for taxes invalid where apparently no great injustice has been suffered; but when the necessity arises it is commonly because tax officers persistently disregard the limitations which are imposed by express statute upon their authority. Mere irregularities the courts may overlook, but they are powerless to sustain illegal action. In

the case of *Wilson v. McKenna* 52 Ill. 43, it was said that a similar statute had long been a dead letter on the statute books of Illinois; but at last when some one claimed rights under it, it was held unconstitutional.    See also *Reed v. Tyler* 56 Ill. 288.    We find no escape from the same conclusion.

It is said with much truth that the owner of the land in these cases is entitled to no consideration, for he might have paid the legal tax and avoided the sale.    But while this is true, it is also true and is notorious that tax delinquencies are often the result of accident or fortuitous circumstances; such as the death or disability of owners, errors in making or offering to make payment, neglects or omissions of officers, and so on.    The purpose of the law is to make the sale of the land for the lawful tax and charges the sole penalty for the failure to pay, whether the failure is blameable or excusable. Equitable circumstances cannot come in to affect the sale, whether they operate one way or the other.    If one by accident or misfortune loses the land, he is helpless ; if he defeats a sale because the official steps leading to it are in disregard of the law, the blame primarily should rest upon the officers themselves.

There is one fact having much to do with tax delinquencies which has hitherto received little attention, though deserving much.    It is the heavy penalty that is imposed when payment is not promptly made.    Were this penalty merely interest— even the highest interest individuals may take—nothing could be said against it; but twenty-five or fifty per centum is added in order to induce a more prompt payment into the State treasury; and this too at a time when the State treasury is overflowing.    No doubt it has the effect intended in a great many cases, but it also fails in a great many, and the rapid accumulation, especially when some portion of the tax is illegal, becomes then a reason for refusing to pay at all.    This is particularly the case when special taxes like those for drains, are laid ; for these are generally heavy, and are not unfrequently laid in total disregard of the law.    One who finds it impossible or inconvenient to pay such a tax when it comes due is not likely to be brought to the mind

to do so by the addition of a penalty afterwards, and the larger the penalty the greater is his inducement to seek refuge in litigation. We have no doubt that much of the large accumulation of local taxes now carried by the State is due to excessive penalties; and so long as the State carries them, local officers are encouraged to make excessive levies for local purposes. They get the money even when the tax is illegal; the State carries the burden, and the owner contests his liability. However unwilling the courts may be to aid him, the heedlessness with which the several steps are taken in tax proceedings often leaves them no choice.

The judgment must be reversed with costs and a new trial ordered.

CAMPBELL and GRAVES, JJ., concurred.

MARSTON, C. J., dissenting. I have been unable to concur with my brethren in this case. If anything is settled beyond dispute, it is that the right of imposing taxes and the manner of levying and collecting the same are matters exclusively within the power of the Legislature, and the tax payer has no constitutional right to a trial at law as a condition precedent to a sale of his property as a means of enforcing payment of the tax.

Every man is presumed, nay bound, to know the law. The owner of real property situate in this State knows that the State derives its revenue principally from an imposition of taxes upon real estate, and that a prompt collection thereof is absolutely essential to the maintenance of the honor—indeed of the life of the commonwealth. He also knows that the law has given him an opportunity to appear in person or by an agent and examine, and if necessary have corrected, the assessed value of his lands. He farther knows that taxes for various purposes will be spread upon the roll, which will then be placed in the hands of a public officer for collection; and that if not paid by a stated time the lands will be sold therefor on a day certain, after public notice of such sale shall

have been given; and that if not redeemed within a prescribed period the purchaser will receive a deed of such lands from the State. He also knows that from the time the roll is placed in the hands of the proper officer for collection of the taxes assessed thereon, up to the time when a deed may be given, a period of about twenty months, he may pay or tender the whole or such part or portion of the taxes as were legally assessed against his lands, with the legal costs and charges, and by so doing thereby fully protect himself against all illegal exactions. With full knowledge of all such facts, of the law and of his right to thus protect himself, and that it is not only his legal but moral duty to contribute to the support of the government which protects him in the right and enjoyment of the property so assessed, by at least paying all legal taxes, he neglects or wilfully refuses to pay even them and permits his property to be sold at a public and *prima facie* valid sale, in reliance upon his ability to show that a fraction of the taxes were illegal and thus defeat the whole,—it is clear that under such circumstances the delinquent tax payer has no equitable considerations favorable to relief.

I am aware that some courts have gone very far—indeed have been astute—in finding defects under which tax deeds could be declared void, and especially has this been so where any part of the tax, however small, was found excessive or illegal. How far such decisions should be followed, in the absence of legislation such as we now have under consideration, is immaterial in the present case. The strong, and it seems to me the only sound argument, worthy of consideration, which can be presented against the validity of this act is that advanced by my brother Cooley, touching the method of selling the land.

To my mind this is not of so much force in view of the actual practice, which I think should not be overlooked. It is but rare indeed that less than the entire tract is sold for the taxes assessed thereon, without any reference to the value of the land or the amount of the taxes; and this is because of the supposed worthlessness of tax titles, few being willing to

bid at such sales and they largely as a matter of speculation. In the next place the great bulk of the tax usually is valid, so that the illegal portion could have affected the quantity of land sold in but the slightest if indeed in any important degree.

In view of the knowledge which the owner has relating to the assessment of taxes; of his opportunities to appear and be heard; to pay such part as may be legal; and of the consequences of a refusal, why should he not be bound when he stands by and permits a sale and conveyance to be made? Where a party is brought into a court which has jurisdiction over the subject matter, and there permits a judgment to be rendered against him, and a sale of his property to be made in satisfaction thereof, he could not afterwards come in and have such sale set aside, because illegal claims were included in the judgment. A remedy is given the party and if he fails to pursue it, he is concluded, and yet even in such cases, courts frequently give relief, if applied for in season, on condition that the proper amount is paid or stands as a valid claim.

It may, however, be said that the State is selling the lands of an individual upon a claim a portion of which is illegal and that this it has no power to do. This is true to the extent that a part of the amount for which the land was sold was not a proper charge, but the owner permits the sale to be made with the intention of not simply protecting himself against an illegal exaction, but farther to cheat the government out of its legal proportion of the same claim. Why in tax matters should the rights of the citizen be superior to those of the government? But it is the duty of the government to have the law observed in the assessment and collection of its taxes; this is undoubtedly true, but the government must work through imperfect human agencies, and it is equally the duty of the land owner to pay what has been legally assessed. Here are corresponding rights, duties and obligations. The Legislature has endeavored to give the owner of real estate full and ample opportunity to protect himself, but at the same time insisting that he must respect the rights of the government, and it is only upon his neglect or refusal to

respect this latter right that his property is sold as a mode of enforcing obedience.

Is this beyond the power of the Legislature? I think not. In *Sears v. Cottrell* 5 Mich. 251, it was held that the Legislature had a constitutional right to authorize one man's property to be seized and sold for the taxes of any other person in whose possession it was found, and the only redress allowed was an action against the person for whose taxes it was sold which, in case of his insolvency, rendered the remedy one of questionable value. In such a case the party is deprived of his property to satisfy a claim which he is under neither a legal nor a moral obligation to pay. Without discussing this question at any greater length I am of opinion that the fact that a part of the taxes for which lands were sold was illegal should not render the sale and conveyance void; that the owner of the land, with full knowledge of the remedy afforded him, and not thinking proper to avail himself thereof, ought not afterwards, under the guise of protection, to be absolved from the payment of what legally and justly belonged to the State. A strict enforcement of this law can injure none, while it will be of incalculable benefit to the government, and for these reasons I am of opinion that the statute should be sustained.

In reference to the question of interest, but without expressing any opinion upon the effect thereof, I concur in what has been said by my brethren.

Under section 1036 of the Compiled Laws, any person interested could pay returned taxes at any time up to September 20th next preceding the time appointed for sale of the lands, with interest thereon at the rate of 15 per cent. per annum from the first day of February next after the assessment; *provided*, that on all taxes remaining unpaid on the first day of June next after the same were assessed, the interest should be computed at the rate of 30 per cent. per annum from February 1st. This section has since been amended and the rate reduced.

After a sale of the lands, owners thereof or of any interest therein, could redeem at any time previous to the thirtieth

day of September succeeding the sale, by paying the taxes for which their lands were sold with interest thereon at the rate of fifty per cent. per annum, of which interest one-half went to the State and the other half to the purchaser at the tax sale. § 1059. The interest in all such cases was computed from the day of the sale up to the end of the current quarter of the year limited for redemption. § 1060. Section 1059 has also been amended and the rate reduced.

Now without attempting to follow up this legislation, it is well settled that a penalty is thus imposed under the guise of interest. *F. & P. M. Ry. v. County Treas.* 32 Mich. 260.

It has been said that this question of interest is one altogether within the power of the Legislature, limited in amount only by the wisdom and discretion of that department. If this is so, then there is no legal limit to the amount of the penalty that may be imposed, and in the light of §§ 1059 and 1060 it can hardly be said the discretion is one not likely to be abused.

But let us see whether the matter is one so clearly within the power and unlimited discretion of the Legislature. The right of the Legislature to establish a general and uniform rate of interest will not be questioned, but under no circumstances can this be recognized as such. It fluctuates; the rate fixed at a certain percentage is, at a future day certain, increased, and such increase made to refer back over past time, and also to be computed to cover a fixed period of which but the merest fraction may have arrived. What good reason there can be for this last provision is somewhat difficult to discover. It is certainly no encouragement to a prompt payment; the default of a day is punished as severely as the one of months. Interest usually is supposed to cease running on payment of a past-due debt, but this provision is based upon no such maxim. It is therefore but a penalty pure and simple.

Penalties are usually imposed as a punishment, and are supposed to bear some relation to the wrongful act done or omitted, and the circumstances attending the same. Here there is no such discrimination; the penalty is not imposed

to discourage fraud, or designed to operate as a check thereon. The man who wilfully refuses to pay his taxes, although abundantly able, is punished no more severely than he who has failed through inadvertence or inability, however caused; and the same is true as to minors and others who are entitled to and usually receive lenity and protection during their disability.

This penalty is arbitrarily imposed, largely for the benefit of private individuals, and the person against whom it is imposed has no opportunity given him to appear in any way and contest it. There is no judicial determination that a penalty has been incurred, and where a sale has been had there is not even the semblance of notice, or any act except computation of the amount by a ministerial officer. Nor is there even a pretense that the State thereafter has the slightest interest in the question of payment or non-payment by redemption or otherwise, as the risks after a sale and purchase by a third party are purely private in their nature and of no concern to the State. The certainty of a reasonable interest to the purchaser, with a probability, if not redeemed, of acquiring title to the lands, should be to him sufficient encouragement and protection. Nor can this penalty be considered as a part of the tax. If it could be so considered it would still be open to fatal objections. The essential requisite of all taxation requires it to be for public purposes, and whether we consider this penalty as payable to the State or to individuals, it is lacking in this respect.

Respectable authorities will be found in support of the views above expressed. See *Scammon v. Chicago* 44 Ill. 269; *Wauwatosa v. Gunyon* 25 Wis. 271; Cooley on Taxation p. 313, and cases cited.