## LEON A. DICKISON, BY NEXT FRIEND v. JOB T. REYNOLDS.

*Assignment of intestate's property to heirs—Assessment of property belonging to estate—Assessor's and surveyor's certificates—Return of delinquent taxes.*

When all the debts of an intestate have been paid, and the administrator is discharged, the assignment of the property to the heirs and next of kin is a mere formality, which it is the duty of the court to make and which nobody can contest.

Slight showing that such an assignment has been made will be sufficient to support a finding to that effect where it appears that the probate court has proceeded to partition the lands among the heirs.

Where the statute—Comp. L. § 976—permits the property of an estate to be assessed to the heirs or devisees without naming them, an assessment to the estate by name is held to be legally equivalent, and therefore sufficient.

Where in an assessor's certificate the lands are certified to be assessed at the "cash value" instead of the "true cash value" as required by law, but in another part of it the personal property is certified to as assessed at its "true cash value as aforesaid," the omission of the word "true" in the first place is held to be a clerical error, and not fatal.

Where the certificate required by the statute to be attached to the assessment roll is attached but not signed, the defect is fatal. And there can be no presumption in such a case that there once was a proper certificate duly signed ; as the incomplete certificate negatives this.

The fact that a supervisor's certificate to an assessment roll is dated before the day of review, when parties have a right to appear and be heard on their assessments, is not important. The date may be an error, and if not, the review may nevertheless have taken place.

Where the assessor's certificate stated that the lands were assessed at "the cash value thereof, and not at the price it would sell for at forced sale," when the statute required it to state that the lands were assessed at "the *true* cash value thereof and not at the price it would sell for at forced or *auction* sale," *held*, that these variances had an appearance of evasion, as if the certificate was made with mental reservation as to the meaning; and that it would not be sustained.

A township treasurer's return of delinquent taxes is good if in the statutory form, and it will be presumed, if necessary to sustain it, that personal demand was made for taxes assessed upon residents.

Error to Newaygo.   Submitted Apr. 7.   Decided Apr. 19.

EJECTMENT.   Plaintiff brings error.   Reversed.

*A. G. Day* for appellant.   A decree for the distribution of an intestate's estate is part of the ordinary proceedings of the probate court : Freeman on Judgments §§ 124, 122 ; *Arnold v. Nye* 23 Mich. 286-292 ; *Crane v. Reeder* 28 Mich. 527 ; *Saunders v. Tioga Manfg. Co.* 27 Mich. 520 ; *Jennison v. Haire* 29 Mich. 207, 214 ; *People v. Gordon* 39 Mich. 259 ; an assessment of taxes against an intestate's estate should be against the heirs : Cooley on Taxation 300 ; *Cook v. Leland*

5 Pick. 236 ; a township treasurer's return of delinquent taxes must show that demand was made for the taxes: Comp. L. § 1004 ; *Rayner v. Lee* 20 Mich. 384; *Smith v. State* 43 Ala. 344; the supervisor's certificate to the assessment roll must be signed: *Sibley v. Smith* 2 Mich. 486; *Warren v. Grand Haven* 30 Mich. 30.

*William D. Fuller* for appellee.

Cooley, J.    Action of ejectment.    The plaintiff had judgment in the court below.

The plaintiff was one of the heirs at law of Frederic Dickison, deceased, and he claims the lands in dispute under partition proceedings in the probate court, whereby they were set off to him in severalty.    The seizin of Frederic Dickison, his death, and the descent of the title to the plaintiff and others, are not disputed, but the proceedings in partition are contested as not being in compliance with the statute.    The defect which is particularly pointed out is the want of a decree of the probate court assigning the residue of Frederic Dickison's estate to the heirs after administration and before making partition.

The finding of facts shows that an administrator was duly appointed on the estate of Frederic Dickison, and that he administered fully and was regularly discharged November 6, 1871.    There should then have been under the statute— Comp. L. § 4496—an assignment of the remaining estate to the persons entitled ; and in *Campau v. Campau* 19 Mich. 116, it was said that this assignment was a prerequisite to a partition of the lands in the probate court.    Where, however, all demands against the estate are satisfied, as was the case here, the assignment is a matter of course and a mere formality, which it is the duty of the court to make and which nobody can contest.    In the absence of any showing on the subject, if the probate court afterwards assumed that such assignment was made, much might be said in favor of a presumption of law that the formal decree had been entered ; but it is unnecessary to consider the point in this case.    In the petition for a partition the existence of such a decree is

expressly affirmed, and so it is in the warrant issued upon that petition. It is also expressly found by the circuit judge in this case, as a matter of fact, that such a decree was made; and though the proofs are not as satisfactory as would be desirable, it cannot be said there was an entire absence of evidence on the subject. The finding must therefore be accepted as conclusive.

The defendant claimed paramount title under tax sales, and the validity of these comes next under review They were made for the taxes of the years 1871, 1872, 1873 and 1874.

The tax sale for the year 1871 is supposed to be invalid, because the assessment was made to "Dickison estate," instead of the heirs at law by name. We think not. The estate was at that time undivided, and the statute—Comp. L. § 976—permitted lands to be assessed to the heirs or devisees without naming them. Assessing it to the estate was in legal effect assessing it to unnamed heirs. The sale for 1872 was held void for the reason, among others, that the certificate, required by law to be attached to the assessment roll, and which is to show the manner in which the assessment was made, was never signed by the supervisor. This is an objection that cannot be overcome. It is suggested on behalf of the defendant that, as the law presumes the performance of duty, the mere fact that a certificate does not now appear, does not establish that none was attached when the roll was completed. It is true that the statute—Comp. L. § 1129—establishes a presumption that all necessary papers were made and filed. *Upton v. Kennedy* 36 Mich. 215, 221; but the presumption in this case is overcome by the production of the assessment roll with an unsigned certificate attached. This is very conclusive evidence that the supervisor failed to complete his work.

For the year 1873 the land was assessed as non-resident. This would be a fatal defect if the owners then resided in the township, but the finding does not expressly show the fact. The certificate attached to the assessment roll was as follows: "I do hereby certify that I have set down in the

48 Mich.—11

foregoing assessment roll all the real estate in the township of Dayton liable to be taxed, according to my best information ; and that I have estimated the same at what I believed to be the cash value thereof, and not at the price it would sell for at a forced or auction sale. That the said assessment roll contains a true statement of the aggregate valuation of the taxable personal estate of each and every person named in said roll; and that I have estimated the same at the true cash value as aforesaid, according to my best information and belief." [Dated and signed.] This is in compliance with the statute except that the word *true* is omitted before the words " cash value " where they first occur. But this was doubtless an unintentional omission; for when at the conclusion the supervisor certifies that he has assessed the personal property at the " true cash value as aforesaid," he shows that the words " cash value " and " true cash value " are used as synonymous terms.

The date of the certificate was two days before the time fixed by law for reviewing the roll and hearing complaints. This is supposed to show *prima facie* that there was no such review. We do not think so. A date is not essential to such a certificate, but if attached it might as well be done before the review as afterwards, especially if no changes were made in reviewing.

In the certificate to the assessment roll for 1874, not only was the word " true " omitted before the words " cash value," but the words " or auction " were omitted between the words " forced " and " sale." We doubt if we can hold these omissions to be merely clerical and presumptively accidental. This certificate is no mere matter of form. It has been prescribed by the Legislature on reasons supposed to be imperative, and for the purpose of correcting a notorious and very serious abuse. The statutory requirement has always been that the supervisor should assess property at its cash value, and that he should certify the fact; but in their anxiety to make the assessment low, it has been customary for these officers to assess at a fraction of the cash value only, while they excused themselves to their con-

sciences by some such sophistry as that, if the property were put up to a forced or auction sale, it would bring no more than they had assessed it at. The Legislature undertook to render this subterfuge impossible by requiring the supervisor to certify that he had assessed the property at the *true* cash value, and *not* at what it would sell for at forced or auction sale; and as the Legislature has deemed these words necessary to prevent evasions, we are not at liberty to dispense with them. A forced sale is not necessarily an auction sale; an auction sale is not necessarily a forced sale; and it is not admissible therefore to say that one of the two terms answers the requirement for both. But even if they were synonymous, the omission of one, in the light of the history of the statute, has too much the appearance of an intentional departure from the required form, as if the certificate of cash value was made with mental reservation. The defect is fatal. *Silsbee v. Stockle* 44 Mich. 561.

All the sales are claimed to be void, because the return of the township treasurer to the county treasurer does not show that the former made personal demand of the taxes before returning the land as delinquent. The returns for each year appears, however, to be in strict compliance with the statute—Comp. L. §§ 1019, 1021—and shows that the township treasurer had not, "upon diligent inquiry, been able to discover any goods or chattels belonging to the person charged with or liable to pay such sums, whereupon he could levy the same." This is sufficient. If personal demand was necessary it must be presumed to have been made.

Our conclusion is that the tax sales for 1871 and 1873 were not shown to be invalid, and that the circuit judge erred in holding them to be so. An objection was made on the trial to supposed excessive charges by the State; but the facts do not sufficiently appear to enable us to pass upon them.

The judgment must be reversed with costs and a new trial ordered.

The other Justices concurred.