THOMAS SINCLAIR v. CHAS. G. LEARNED AND JONAS R. LEARNED.

*Foreclosure and tax sales—Tender—Surplus—Assent to purchaser's possession—Supervisor's certificate to assessment roll—Tax purchaser's duty—Comp. L. § 1141.*

The presumption of law that a public officer performs his duty applies where the question is whether a sheriff's deed on foreclosure was immediately filed by him as required by Comp. L. § 6920; and unless the circumstances of the case overturn it, prevails so far as to throw the burden of proof upon the party who questions the fact.

Notice of a foreclosure sale is indispensable to its validity, and as it is the act of the party, and not of the officer making the sale, the presumption of the performance of official duty does not apply for the purpose of making out a valid foreclosure without actual proof of notice.

A mortgagee has a right to refuse any tender of the amount due on the mortgage, if made by one who, as between the mortgager and mortgagee, is a stranger to their dealings and therefore has no right of redemption: so *held* where tender was made by one who was neither mortgager nor mortgager's grantee and who did not act in the interest or at the request of the mortgager and had himself no interest in the equity of redemption but only held some tax-titles which were not subject to the mortgage.

Non-payment by the sheriff to the mortgager, of a surplus received on foreclosure sale, does not defeat the sale, for the sheriff must account for the money to the mortgager even though he fails to obtain it, and if the mortgager redeems without getting it, he still has an unquestionable right to have it taken into account.

The mortgager's assent to the possession of the foreclosure purchaser should be presumed if much time has passed without any question as to the validity of the foreclosure; and such assent would entitle the purchaser to hold as mortgagee, if not as owner, except as against proceedings to redeem.

A tax-sale is void if the supervisor's certificate to the assessment on which it is based states only that he has assessed the property " at its true cash value " without adding the words " and not at the price it would sell for at forced or auction sale." Comp. L. § 991.

A tax is void if the supervisor, in apportioning an increase in the valuation of the lands on the assessment roll, distributes it upon the real estate only, and not on the personalty also. Comp. L. §§ 993-5, 999.

Comp. L. § 1141 provides that the holder of a tax-title shall not be entitled to possession as against the holder of a subsequent tax-deed until he shall have paid or tendered to the latter the amount of the tax for which such subsequent tax-deed was given. *Held* that the subsequent title which will thus preclude possession is not necessarily a legal tax-title, though the tax on which it was based must have been one that was not merely arbitrary but had some warrant in law.

Every tax-sale in Michigan is a sale of the complete title, and if legal cuts off all prior titles.

The payment as taxes of arbitrary demands unwarranted by law cannot be coerced by indirect means if it is not compellable by tax-warrant; and validating acts or legislation withholding rights until payment is made will impose no obligation to pay them.

Whatever the Legislature can dispense with in advance it can dispense with retrospectively by enacting that its omission shall not prejudice. So *held* of certificates to an assessment roll.

Certificates to an assessment roll are necessary only because they are required by statute; and it is within legislative power to provide in express terms that a tax-sale shall not be void even though the certificate was defective in substance or was altogether omitted.

A bill will *not lie to set aside* taxes or a tax-sale on the ground that the supervisor's certificate to the assessment roll did not comply with the statute, because such an irregularity would not injure complainant and his case would therefore be without equity.

One who seeks to vacate a tax-sale on the ground that the tax was excessive must first pay or offer to pay what is equitable.

Error to Huron. (Stevens, J.)   June 21.—October 3.

EJECTMENT.   Plaintiff brings error.   Affirmed.

*Winsor & Snover* and *Wm. T. Mitchell* for appellant. A sheriff's deed on statutory foreclosure is invalid if not deposited with the register of deeds within a year from the date of sale: *Doyle v. Howard* 16 Mich. 261; and the deed itself is not sufficient evidence of the regularity of the sale without proof that the statute was complied with: *Barman. v. Carhartt* 10 Mich. 338; *Hebert v. Bulte* 42 Mich. 489; a tax is void if not legally assessed: *Joyner v. Sch. Dist. 3. Cush. 572; Cooley on Taxation 3.

*Engle & Engle* for appellees.

COOLEY, J. In this action of ejectment the plaintiff claims the land in controversy under deeds from the Auditor General given on sales thereof for delinquent taxes of the years 1861 and 1862, and also by a quitclaim deed from the original purchaser from the United States, bearing date in 1880. The defendants, on the other hand, claim to have acquired the title of the patentee through the foreclosure in 1866 of a mortgage given by him in 1859; and as the mortgage does not appear to be disputed, the foreclosure, if valid, would have left nothing for a subsequent quitclaim by the patentee to operate upon. The defendants also claim that the plaintiff's tax titles were cut off by a subsequent sale to Jonas R. Learned, for delinquent taxes of 1874; or, if not cut off, that no suit can be maintained upon them so long as the tax title of 1874 is outstanding in another party than the plaintiff. They also show the payment of taxes by themselves since 1874, and they claim the benefit of such payment under the statute which will be hereinafter mentioned.

Though the evidence of possession is not very distinct, it seems to be assumed in the case that defendants are in possession, and they claim to have taken possession under the foreclosure. Proofs of a regular and complete foreclosure are not, however, made. The defendants did not prove the publication of notice of sale, and there was no positive evidence that the sheriff's deed, given on the foreclosure, was filed as the statute requires. It was shown that the register of deeds of the county at the time the sale was made, kept no books to show the date when such deeds were received in his office; and the case was therefore entirely without any direct evidence to show whether the deed was or was not duly filed. On this state of the proofs the plaintiff disputed the right of the defendants to claim any rights under the foreclosure.

As the statute, Comp. L. § 6920, made it the duty of the sheriff to file the deed immediately, it would seem that the presumption of law that an officer performs his duty ought to prevail until the fact was disproved. This is a

very necessary presumption where considerable time has elapsed since the official act was done or should have been done, and it ought to prevail so far at least as to throw the burden of proof upon the party questioning it, unless the circumstances of the case overturn it. *Ward's Lessee v. Barrows* 2 Ohio St. 241; *Conwell v. Watkins* 71 Ill. 488; *Farr v. Sims* Rich. Eq. Cas. 122 : s. c. 24 Am. Dec. 396; *Hilts v. Colvin* 14 Johns. 182; *Hartwell v. Root* 19 Johns. 345; *State v. Howard* 10 Iowa 101. This rule was applied in *Cofield v. McClelland* 16 Wall. 331, in support of a conveyance of public lands made by a probate judge, which could only be lawfully made after publication of a notice which was not proved to have been given; the court speaking of it as a rule well settled and often applied.

The presumption, however, would not make out for the defendants a legal foreclosure of the mortgage, for the notice of sale was an indispensable requisite, and the notice was the act of the party and not of the officer. The foreclosure was also assailed on other grounds. The plaintiff being on the stand as a witness on his own behalf, his counsel, as the record states, " proposed and offered to prove by him that the mortgagor, Babbitt, went into the army, and before going paid the mortgage debt by lumber taken from the land in question and sold to the mortgagee's firm under a contract, and for that reason the mortgage was not put on record for several years after its date; after which they recorded and proceeded to foreclose it; that he was present at the foreclosure sale; that the sale was not a fair one and not made in good faith; that the mortgagee bid in the property; that the plaintiff was prepared to bid it in at a much higher price than it was sold for; that he tendered and offered to pay the full sum secured by the mortgage, with interest and costs; that the mortgagee's attorney was willing to accept it, but the mortgagee refused to allow him to pay and discharge the lien of the mortgage; that he bid upon the property a sum larger than the mortgagee had bid, when a party in the interest of the mortgagee called him aside and advised him not to bid, as the surplus would

go to the mortgagor, and that meanwhile the sheriff struck of the property to the mortgagee; and that the property, except for this action, would have brought more." Also " that the land was bid off by the mortgagee for more than the amount due, interest and costs, even if nothing had been paid upon it, and that no money or surplus was paid to or deposited with the register of deeds, or paid to the sheriff." All this proposed evidence was objected to by the defendants and ruled out by the court.

It will be noticed that the proposed evidence attacked the foreclosure on four distinct grounds: *First*, that the mortgage debt had been previously discharged; *second*, that a tender of the debt was made and refused before the sale was made; *third*, that the sale was fraudulently conducted; *fourth*, that the surplus bid on the sale above the mortgage debt, was not paid over or accounted for. Notice will be taken of these severally, though not in the order here given.

The tender proposed to be proved appears to have been made by the plaintiff. The objection to it was that the plaintiff was not in position to make it. He was not mortgagor, or the grantee of the mortgagor, or in any manner at that time interested in the equity of redemption. He had tax titles, it is true, but these were not subject to the mortgage. There was no offer to show that the tender was made for or in the interest or at the request of the mortgagor. It was therefore made by one who as between the mortgagor and mortgagee was a stranger to their dealings and an intermeddler. Nothing is plainer than that such a person has no right of redemption. If the mortgagee had accepted the money, he could not afterwards have claimed rights under the mortgage; but it is assumed that he refused it; and this he clearly had a right to do. *Lomax v. Bird* 1 Vern. 182; *Grant v. Duane* 9 Johns. 591; *Smith v. Austin* 9 Mich. 465; *Byington v. Bookwalter* 7 Iowa 512; *Eaton v. North* 25 Wis. 514. The alleged tender, if made, was therefore immaterial.

The fact that the sale was for more than the amount due,

and that the surplus was not paid over, is said to show that the sale was incomplete, and that no title passed for that reason. *Miller v. Miller* 48 Mich. 312, which is relied upon as supporting this proposition, holds only that the sale is incomplete if the successful bidder takes back his offer immediately upon acceptance. It was not proposed to show that such was the case here. The purchaser received the deed, caused it to be recorded, and claimed the land under the foreclosure. There was therefore no ground for any suggestion that the offer to purchase was recalled and the sale abandoned. And it is not claimed that the mere failure to pay over the surplus while the purchaser was insisting upon the sale and the sheriff was recognizing his right would defeat it. The sheriff must account to the mortgagor for the money even though he failed to obtain it, and if the mortgagor redeemed without having received it, his right to have it taken into account would be unquestionable. The fact of non-payment has therefore no importance in this case unless as it may bear upon the question of fraud in the sale.

The question of alleged payment of the mortgage demands more attention. The offer was to show payment by the mortgagor; and it is clear that if the mortgage had been. paid, no sale could afterwards have lawfully been made under the power. The time of payment is only vaguely stated in the offer. The mortgagor, it is said, "went into the army;" and before going, paid the mortgage in lumber taken from the land. What army he entered is not stated, or when he went. Probably, however, we shall be justified in assuming that the army intended was the army employed in the late civil war, and that the time of entering it was during the continuance of that war. It was certainly, according to the offer, before the time of the sale in 1866 that the payment was made. What is then noticeable is that for fourteen years after the mortgagor's land had been sold on a satisfied mortgage, and sold, too, as plaintiff claims, in disregard of the mortgagor's rights in other particulars, and

notwithstanding an offer of another party to pay the mortgage a second time, the mortgagor takes no steps, apparently, to contest and set aside the unlawful and fraudulent sale, but allows it to stand of record with every appearance of validity so long as he remains the owner; and question is made concerning it for the first time, so far as we are informed, after fully fifteen years had elapsed from the time of the sale, and a still longer period from the time of alleged payment, and is then made by a party to whom the mortgagor, after this long lapse of time, has quitclaimed his interest.

Whether, where parties interested adversely to a mortgage foreclosure allow a period of time sufficient for barring rights of entry to elapse without taking steps to contest the sale, they can then be suffered, in a suit at law, to prove that at some prior time, which may have been still longer before the sale than the period which has elapsed since, they satisfied the mortgage by payment, is a question deserving of very serious consideration. It is certain that if this may be done, the evils against which the statute of limitations is intended to guard have not been reached in cases of this description ; for the purchaser at the mortgage sale may be called upon to meet evidence of payment thirty years or more before the time of trial, and fifteen years or more after proceedings in assertion of the continued existence of the mortgage had been taken and acquiesced in. As such proof could be made against any other purchaser at the mortgage sale as well as against the mortgagee himself, there would manifestly be no security whatever in paying money on a statutory foreclosure if such a right were recognized.

The circuit judge appears to have been of opinion that proof of payment before the sale, or of fraud in making the sale, were not available in a suit at law, and that the plaintiff should have filed his bill to redeem or to have the sale annulled in equity. Whether it would be universally true that a sale fraudulently made or made after payment must be contested in equity we need not now inquire ; as we

agree with the circuit judge that under the facts of this case it should have been so contested. After this great lapse of time, without question being made as to the validity of the foreclosure, it should be presumed that the mortgagor has assented to the purchaser's possession; and the assent is sufficient to entitle the purchaser to hold it—as mortgagee at least, if not as owner—except as against proceedings to redeem. No error is, therefore, discovered on this branch of the case.

More serious questions arise upon the tax titles. The plaintiff, as has been said, holds conveyances for the taxes of 1861 and 1862, and if these or either of them is valid, and he has a right to rely upon them under the circumstances of this case, the mortgage becomes of no moment, for the title of both mortgagor and mortgagee would be cut off by the sales for taxes. It does not appear by the record that either of these tax sales was contested, and for the purposes of this opinion it will be assumed that they were in all respects regular and legal.

But the defendants, as we have seen, claim under a subsequent sale of the lands for the taxes of 1874, and they also show that they paid subsequent taxes to the amount of $73.54, upon the lands in controversy. They then rely upon the statute of 1869, § 1141 of the Compiled Laws, which declares "that no person shall be entitled to the recovery of the possession of land purchased and held by such person from the state, or held as grantee of a previous grantee or grantees of the state, for the non-payment of taxes, nor shall any such person or his legal representatives be lawfully entitled to the possession of any such lands, unless such person shall have, at any time before final judgment in his favor, or at the time of entering into such possession, either paid all the taxes levied and assessed upon such lands, subsequent to the date of any tax deed under which he claims, or tendered the amount of taxes thus paid to the person who paid the same, if such person be the person against whom recovery is sought, or shall have acquired all the tax titles given for the taxes levied and assessed subsequent to

such first-acquired tax title, and previous to the entering into such possession."

The plaintiff meets the defendants' claim on this branch of the case by showing *first*, a tender of the sum so paid by the defendants for taxes, but whether with interest does not appear; and *second*, certain defects in the tax assessment for 1874 which were sufficient to render it invalid, and which as he claims preclude the defendants from relying upon his purchase for that year, for any purpose whatever.

One of the defects relied upon consists in this: that the supervisor, in certifying to his assessment for the year, after stating that he had assessed the property described in his roll " at its true cash value," neglected to add the words required by the statute, " and not at the price it would sell for at a forced or auction sale." Comp. L. § 991. This omission we have held to be fatal to a tax sale based upon the assessment. *Silsbee v. Stockle* 44 Mich. 561; *Dickison v. Reynolds* 48 Mich. 158.

Another defect was caused by an error of the supervisor in dealing with the equalization. The assessment made by him, it appears, footed up $96,335. The board of supervisors thought the valuation of lands, as compared with other assessments in the county, was relatively too low, and they increased it by adding $10,000 to the total assessment of the township. The supervisor of this township appears to have supposed it then became his duty to spread the $10,000 as an addition to the several assessments of land on his roll; and he proceeded to do so; increasing the assessment of the land now in controversy from $400 to $460. This made the whole burden of the increased assessment of the township fall upon the real estate, and was erroneous for that reason. The statute, while it contemplates an equalization as between the townships with reference to real estate only, does not assume that the assessments of real and personal estate made by any supervisor are relatively unequal or unjust, and therefore does not change or disturb them, but leaves the burden or benefit of any increase or diminution made by the supervisors in the total assessment of his township to be shared alike

by both realty and personalty.   Comp. L. §§ 993, 994, 995,
999.   The tax upon this land was therefore excessive, and
the title was void for that reason.   *Case v. Dean* 16 Mich.
12; *Edwards v. Taliafero* 34 Mich. 13; *Hammontree v.
Lott* 40 Mich. 190.

The tax title for 1874 being thus found to be invalid, it
remains to see whether defendants can derive any benefit
from it under the statute of 1869.   The plaintiff denies that
they can, and insists that the tax title intended by the stat-
ute must be a legal tax title; or at least must be a title ob-
tained on a sale of the lands for legal taxes.   *Upton v. Ken-
nedy* 36 Mich. 215.   The question presented is very impor-
tant, and is partly one of statutory construction and partly of
constitutional power.

It seems certain that the tax title contemplated by the Act
of 1869, which is to preclude the recovery by the plaintiff
upon a prior tax title, is not necessarily a *legal* tax title; for
the statute was not needed for the protection of the holder
of such a title.   Every sale of lands under our tax system
is a sale of the complete title; and if legal, all prior titles
are cut off by it.   The statute, if it had the protection of
any such sale in view, was to that extent merely idle; for it
was assuming to give protection to a title which was already
unassailable, as against one which was already destroyed.
We have no warrant for imputing so meaningless an intent
to the Legislature.   On the other hand we agree with the
plaintiff that, though the words of the statute of 1869 are
very general and in terms require the plaintiff to acquire all
tax titles subsequent to his own, there must be an implied
exception of some at least; but what the exception shall em-
brace is the question.

If what has been levied under the name of a tax is a
mere arbitrary demand, made by the public authorities with-
out warrant of law, it is not in the power of the Legislature,
by any device whatever, to compel its payment.   It is too
plain to admit of discussion that what the Legislature cannot
do directly it has no power to do indirectly.   If it cannot

coerce payment of what is called a tax by means of a tax warrant, it cannot do so through withholding the party's rights until he makes payment. An assumed tax must be a tax in fact, or no number of validating acts can put any one under obligation to pay it. This is familiar doctrine, and requires no support from authority, though abundance might be had.

But the defects in tax proceedings do not often go to the jurisdiction; they are more commonly found in a failure of the officers connected with the tax proceedings to obey some mandatory requirement of the statute. Such a requirement is always supposed to be important; but it is not always the case that there is reason to believe the failure to observe it would operate prejudicially to the person taxed. Indeed it does not always have his interest specially in view. We have an illustration in the requirement which was disregarded in this case,—that the supervisor's certificate to the assessment roll should show that he did not assess the property at a value which he estimated might be obtained at forced sale. This was adopted on grounds of public policy and to prevent the systematic undervaluation of estates; and when a tax title based upon an assessment roll not properly certified is held void, it is not from consideration of the interest of the tax-payer, but because the statute has made the certificate an imperative necessity. But there is no doubt whatever that the Legislature might have dispensed altogether with this or any other certificate to the tax-roll; and what it might have dispensed with in advance, it may dispense with retrospectively by enacting that its omission shall not prejudice. *People v. Lynch* 51 Cal. 15; *Butler v. Toledo* 5 Ohio St. 225; *Dunden v. Snodgrass* 18 Penn. St. 151; *Boardman v. Beckwith* 18 Iowa 292; *Lennon v. New York* 55 N. Y. 361; *Astor v. New York* 62 N. Y. 580. It would be entirely competent, therefore, to provide in express terms that a tax sale should not be void, even though the certificate to the assessment roll was defective in substance or was omitted altogether.

But with this tax title there was the further difficulty that

an excessive portion of the taxes of the township was laid
upon the land.    How large the excess was does not distinct-
ly appear by the record, and we have no means of accurate-
ly estimating it, as the amount of the personal assessments
is not given.    It is evident, however, that the excess was
small, and if the supervisor was accurate in assigning to this
land $60 as the proportion to be assessed to it if the whole
$10,000 increase were to be added to the realty, the person-
alty of the town must have been assessed at $30,000 or there-
abouts.    Taking that to be the amount, the proportion of
the increase to be assigned to the personalty would have
been under $3200.    Real estate owners were therefore,
wronged in the tax only to the extent that they would have
been had property to the value of $3200 been omitted from
the roll and the burden it should have borne been thrown
upon them; and this, in the case of a parcel like that in
controversy, could not have been very serious.    But the pre-
cise amount could be readily computed from the tax-roll.

The statute of 1869 was aimed at a specific evil, and was
meant to remedy a gross injustice.    It was notorious that
persons claiming to be owners of lands were neglecting the
payment of taxes upon them, relying upon their being paid
by some other claimant, or, in case nobody made payment,
and the land in consequence was sold for delinquent taxes,
expecting to defeat the sale because of some official neglect
or technical fault.    In either case they escaped the burden
of taxation, and when a sale was defeated, it fell upon a par-
ty who received nothing in consideration for his payment.
It was not good public policy to countenance this species of
injustice; and when the claimant who was thus evading
the payment of taxes was himself relying upon a tax pur-
chase, it was very proper for the State to refuse him its aid
to recover the land under his tax deed until he had done
what was just in respect to subsequent taxes and tax sales.
And nothing short of the payment of all such levies as the
land was equitably chargeable with, could be justice in such
a case.

If the plaintiff, instead of resorting to a suit at law, had

filed his bill in equity to set aside the taxes for 1874 or the sale based upon them, because the supervisor's certificate did not comply with the statute, his prayer should have been refused for the reason that the irregularity was one which did not injure him, and consequently his case was without equity. *Albany & Boston Mining Co. v. Auditor General* 37 Mich. 391. If he claimed to have the sale vacated because the tax was excessive, we should have made it a condition that he first pay what was equitable. *Merrill v. Humphrey* 24 Mich. 170; *Connors v. Detroit* 41 Mich. 128. This would be eminently just and right; and the result would be calculated to discourage the neglect to pay taxes on a calculation that they might be defeated on some technicality. But this is substantially what was meant to be accomplished by the Act of 1869. The purpose was to preclude the claimant by tax title from holding the land while at the same time he cast the burden of taxation upon another.

Under the showing in this case, then, the defendants were entitled to be repaid the sums they had paid for taxes of other years than 1874, with interest from the time of payment, and also the amount of the taxes of 1874 with interest after deducting the excess; and plaintiff should pay or tender these sums before judgment in his favor. The tax title for 1874, being invalid for the reasons given, could be relied upon as a payment only.

The judgment should be affirmed with costs.

The other Justices concurred.