# The Blue Iron Mining Company v. The City of Negaunee.

*Taxes—Certificate to assessment roll— Sufficiency.*

A city charter provided that the board of review should attach to the assessment roll a certificate, stating, among other things, that they had estimated the real estate described in

said roll at what they believed to be the true cash value thereof, and not at the price it would sell for at a forced auction sale. The charter further provided that no general or special tax should be held invalid for the purpose of collecting the same for want of any matter or thing not affecting the merits thereof. And it is held that, under this latter provision, a certificate identical with that prescribed by the charter, except that the word "auction" was omitted, is a substantial compliance with the charter, as "forced auction sales" are necessarily included in the broader term "forced sales."

Error to Marquette. (Stone, J.)   Argued April 4 and 5, 1895.   Decided May 21, 1895.

*Assumpsit.* Defendant brings error.   Reversed.   The facts are stated in the opinion.

*Frank A. Bell (E. E. Osborn* and *J. Q. Adams,* of counsel), for appellant.

*Hayden & Young (Dan H. Ball,* of counsel), for plaintiff.

HOOKER, J.   Plaintiff recovered in *assumpsit* for money paid a tax collector to relieve its property from a levy for a tax.   The defendant appealed.   At the circuit the case turned on the question of the validity of the certificate attached to the roll by the council, acting as a board of review.

The charter of the city of Negaunee provides that said board shall affix to the roll a certificate, which may be in the following form:

"We do hereby certify that the above assessment roll contains a description of all the real estate in the city of Negaunee liable to be taxed, according to our best information, and that we have estimated the same at what we believe to be the true cash value thereof, and not at the price it would sell for at a forced auction sale; that the said assessment roll contains a true statement of the aggregate valuation of the taxable personal estate of each and every person named in said roll, and that we have estimated the same at its true cash value, according to our best information and belief." Local Acts of 1891, page 364, chap. 8, § 3.

The certificate attached was identical with that pre-scribed, except that the word "auction" was omitted.

The charter (chapter 8, § 13) provides:

"No general or special tax assessed in said city, upon any property therein, shall be held invalid for the purpose of collecting the same, for want of any matter or thing not affecting the merits thereof."

Under this provision, the certificate may be held a sufficient compliance with the law if in substantial accord with that prescribed. In several cases taxes have been held void for want of certificates. Under a former general tax law, the certificate prescribed was substantially like that prescribed by this charter, except that the words used were "forced or auction sale," instead of "forced auction sale."

In *Silsbee v. Stockle*, 44 Mich. 566, the supervisor omitted the words "and not at the price it would sell for at forced or auction sale." Mr. Justice COOLEY, with the concurrence of Judges CAMPBELL and GRAVES, said:

"The early statutory form did not contain the words which the supervisor has omitted (Comp. Laws 1857, § 806), and the change in the form was made in a revision of the tax law in 1869. If the change in the form whereby these words were brought into it had no important purpose in view, we may well hold that the proceedings are not affected by the supervisor continuing the use of the form which had been in use before. But it is a matter of common knowledge that the change was made for the very purpose of effecting an important change in the assessments. It was notorious that supervisors had been in the practice of evading the previous law, and making assessments at a mere fraction of the real value of the property, when sworn to make it at the cash value. It was very easy to excuse the evasion of duty under the pretense that the cash value of the property was only what it would bring if forced upon the market; and the law was amended for the very purpose of taking away this excuse. It will not do to say that such an amendment is unimportant, and therefore may be disregarded with impunity; it goes to the very essentials of the assessment, and was intended, not only to control that, but also,

through that, all the subsequent proceedings. There is not the slightest doubt the Legislature intended that the adoption of the form given, or one that should be equivalent in substance, should be compulsory in every instance. The failure to adopt it is therefore a fatal defect. *Clark v. Crane*, 5 Mich. 151."

It will be observed that it this case the entire substance of the averment was wanting.

In *Dickison v. Reynolds*, 48 Mich. 162, Mr. Justice COOLEY, again speaking for the Court, said:

"In the certificate to the assessment roll for 1874, not only was the word '*true*' omitted before the words 'cash value', but the words 'or auction' were omitted between the words 'forced' and 'sale.' We doubt if we can hold these omissions to be merely clerical and presumptively accidental. This certificate is no mere matter of form. It has been prescribed by the Legislature on reasons supposed to be imperative, and for the purpose of correcting a notorious and very serious abuse. The statutory requirement has always been that the supervisor should assess property at its cash value, and that he should certify the fact; but, in their anxiety to make the assessment low, it has been customary for these officers to assess at a fraction of the cash value only, while they excused themselves to their consciences by some such sophistry as that, if the property were put up to a forced or auction sale, it would bring no more than they had assessed it at. The Legislature undertook to render this subterfuge impossible by requiring the supervisor to certify that he had assessed the property at the *true* cash value, and *not* at what it would sell for at forced or auction sale; and, as the Legislature has deemed these words necessary to prevent evasions, we are not at liberty to dispense with them. A forced sale is not necessarily an auction sale; an auction sale is not necessarily a forced sale; and it is not admissible, therefore, to say that one of the two terms answers the requirement for both. But, even if they were synonymous, the omission of one, in the light of the history of the statute, has too much the appearance of an intentional departure from the required form, as if the certificate of cash value was made with mental reservation. The defect is fatal."

Here, again, it will be observed that substantial averments were lacking, by reason of the omission of the word "true" and the words "auction sale." The law required the certificate to show not only that the value fixed was not the price that the propery would bring at a forced sale, but it also excluded the price it might bring at an auction sale, which Mr. Justice Cooley very pertinently said was not necessarily a forced sale. The law excluded two tests of value, while the certificate excluded but one. *Sinclair v. Learned,* 51 Mich. 343, *Daniels v. Watertown,* 55 Id. 377, and *Westbrook v. Miller,* 64 Id. 132, are on all fours with *Silsbee v. Stockle.*

In *Paldi v. Paldi,* 84 Mich. 354, the words used were "fixed or auction sale," instead of "forced or auction sale." Mr. Justice Cahill very truly said that the Court could not say that this was a clerical error, or that it was intended by the supervisor that the word "fixed" should have the same meaning as "forced." He cites *Fuller v. Hannahs,* 44 Mich. 578, saying that the only words omitted in that case were the words "as aforesaid;" but an examination of the case will show that this omission was tantamount to the omission of the words omitted in the case of *Silsbee v. Stockle,* and that it carries the rule no further than does that case. It is noticeable that the case of *Paldi v. Paldi* leaves room for the inference that, if the word "fixed" could have been said to mean "forced," the certificate would have been valid. It is also significant that Mr. Justice Cooley, in the two opinions quoted from, has taken the pains to show that the words used were not synonymous with those prescribed, and that the variance was consistent with a mental reservation, or an evasion by the officer of the spirit as well as the letter of the act. We may reasonably conclude that, had the word "compulsory" been used instead of "fixed," Mr. Justice Cahill would have hesitated before holding the certificate insufficient; while, had the certificate in *Dickison v. Reynolds* contained the words

105 MICH.—21.

"at forced sale or public vendue," it is not improbable that the Court would have found the terms used synonymous with those prescribed. Another significant fact in connection with these cases is that they appear to proceed upon the theory that these variances may be designated as shifts or evasions, to enable the assessing officer to list the property at a lower valuation than the law requires. Mr. Justice COOLEY, in *Silsbee v. Stockle,* alludes to the "notorious practice of making assessments at a mere fraction of the cash value," and says that the purpose of the amendment was to cure the evil. He discusses the subject in much the same strain in *Dickison v. Reynolds.*

We therefore conclude that if the certificate in this case is not open to this criticism, and if the term actually used is so broad as necessarily to include the words prescribed by statute, we may properly distinguish it from those cases, and hold the certificate valid. The words required by the charter are "forced auction sale;" the words used were "forced sale." The form prescribed does not include all auction sales, but only forced auction sales, and they are necessarily included in the term "forced sales," and the object of the law is fully met by the use of the broader term "forced sales." We think, therefore, that the court erred in holding this certificate invalid.

The judgment must therefore be reversed, and a new trial directed.

McGRATH, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.