CITY OF BIRMINGHAM *v.* OAKLAND COUNTY SUPER-
VISORS.

## CITY OF BLOOMFIELD HILLS *v.* SAME.

1. TAXATION—ASSESSMENT—PARTIES.

   An individual taxpayer has a right to bring suit for relief
   against assessment for taxes made on his own property.

2. SAME—ASSESSMENT—FRAUD—JURISDICTION.

   An assessment against land for taxes may be assailed in court
   if it can be shown that the supervisor or board of review
   acted fraudulently.

3. SAME—OVERASSESSMENT—TENDER OR PAYMENT OF CORRECT
   AMOUNT CONDITION PRECEDENT TO SUIT.

   Party complaining of overassessment by way of suit to invali-
   date alleged improperly equalized assessment for taxes must
   first pay or offer to pay the correct amount of the tax.

4. SAME—MUNICIPAL CORPORATIONS—PARTIES.

   A city has no authority to pay the whole or any part of an
   individual taxpayer's taxes in order to place itself in a posi-
   tion to bring suit against board of supervisors and State
   tax commission to invalidate alleged improper equalization
   of assessment because of overassessment (1 Comp. Laws 1929,
   §§ 3412, 3417, 3418, 3422).

5. SAME—EQUALIZATION COMMITTEE REPORT—ADOPTION BY BOARD
   OF SUPERVISORS.

   Adoption by board of supervisors of its equalization commit-
   tee's report *held*, to constitute such report that of the board
   (1 Comp. Laws 1929, § 3422).

---

* Continued from Vol. 275.

6. COSTS—TAXATION—PUBLIC QUESTION.

In suits by cities and some individual taxpayers to invalidate an allegedly improperly equalized assessment of property by board of supervisors and State tax commission, no costs are awarded, a public question being involved.

ON REHEARING.

7. TAXATION—CANCELLATION—COURTS.

A court cannot cancel taxes not yet assessed at time bills for such purpose were filed.

8. SAME—INJUNCTIONS—STATUTES.

Bills to declare void valuations fixed by board of supervisors and State tax commission, to cancel taxes and for other relief *held*, properly dismissed, since injunctions to stay proceedings for assessment or collection of taxes are specifically prohibited by statute (1 Comp. Laws 1929, § 3507).

9. SAME—PAYMENT UNDER PROTEST—REMEDY.

Payment of taxes under protest and recovery thereafter in action at law in accordance with statute is sufficient remedy for taxpayer denied injunctive relief against illegal property tax, since prevention of anticipated injury to an individual taxpayer raises no equities in him as compared to the public necessity against disruption of the tax system and for the orderly raising of public revenues (1 Comp. Laws 1929, § 3507).

10. SAME—EQUITY—JURISDICTION—APPEAL TO STATE TAX COMMISSION.

Court of equity has no jurisdiction to stay or set aside proceedings to assess taxes until the tax has been assessed and become a debt or a lien; remedy established by statute, by way of appeal to State tax commission from equalization by board of supervisors being exclusive.

WIEST, J., dissenting on rehearing.

Appeal from Oakland; Simpson (John), J., presiding. Submitted June 11, 1935. (Docket Nos. 96, 97, Calendar Nos. 38,442, 38,443.) Decided September 9, 1935. Submitted on rehearing December 10, 1935. Decided on rehearing June 11, 1936.

Separate bills by City of Birmingham, a municipal corporation, and others, and City of Bloomfield Hills, a municipal corporation, and others, against the Board of Supervisors of Oakland County and State Tax Commission to invalidate an alleged improperly equalized assessment for taxes. Bills dismissed. Plaintiffs appeal. Affirmed.

*Atkinson, Ortman & Watson (Frank W. Atkinson,* of counsel), for plaintiffs.

*David C. Pence,* Prosecuting Attorney (*Donald C. Porritt,* of counsel), for defendant Board of Supervisors.

*Harry S. Toy,* Attorney General, and *Edmund E. Shepherd,* Assistant Attorney General, for defendant State Tax Commission.

EDWARD M. SHARPE, J.  The cities of Birmingham and Bloomfield Hills, located in Oakland county, and certain individual taxpayers of each city began suits against the board of supervisors of Oakland county and the State tax commission in November, 1934. Both suits are alike and the bills of complaint were filed for similar purposes.

Plaintiffs allege a complete failure on the part of the board of supervisors of Oakland county to equalize values as a basis for the assessment and collection of taxes for the fiscal year 1934–1935 in accordance with the provisions of 1 Comp. Laws 1929, § 3422, in that there was a deliberate scheme to compel the taxpayers of plaintiff cities to pay more than their share of the taxes and thus shift the burden of taxes from other parts of Oakland county.

When the assessment rolls of plaintiff cities were presented to the board of supervisors they were re-

ferred to the equalization committee of the board and their report was adopted by the board on July 18, 1934. Following the adoption of this report and after the board had adjourned, the plaintiff cities appealed to the State tax commission which thereupon called a meeting of said commission in Pontiac for September 17, 1934, for the purpose of hearing evidence upon said petition, and directed that each supervisor of Oakland county personally appear on said date with the assessment roll of his township. At this hearing no testimony was taken, although plaintiff cities were given an opportunity to produce evidence. Later the State tax commission made an order dismissing plaintiffs' petitions, whereupon plaintiffs began these suits which were dismissed by the trial judge and from which decrees plaintiffs appeal.

Plaintiffs claim that the assessment rolls prepared by the cities of Pontiac and Royal Oak in said county do not show the true cash values of the taxable property; that said assessment rolls show an omission of large amounts of personal property from the city of Pontiac; that the board of supervisors did not attempt to equalize nor examine said assessment rolls as to whether the property had been assessed at its true cash value; and that the State tax commission denied to plaintiffs a hearing upon the matters as set up in their appeals; that the property of the individual taxpayers of plaintiff cities was assessed by their respective city assessors at its true cash value but was equalized at a higher sum.

The defendants contend that plaintiff cities are not proper parties plaintiff as they own no property subject to assessment and taxation; that the equalization of the entire county as fixed by the State tax commission is conclusive and not subject to review

by courts of law; and further that the allegations of fact set forth in the bills of complaint are too vague, uncertain and general to sustain the charge of fraud.

The laws of Michigan relating to the assessment of taxes so far as they are directly concerned with the facts involved in this case may be found in the following sections of 1 Comp. Laws 1929:

Section 3412 provides that the assessing officer shall make and complete an assessment roll prior to the first Monday in June of each year and that the assessment shall be based upon the true cash value of the assessable property.

Sections 3417, 3418, provide for meetings of the board of review at which time and place taxpayers upon sufficient cause being shown may have valuations upon their property corrected.

Section 3422 provides for the examination and equalization of the assessment roll by the board of supervisors and appeal to the State tax commission by any aggrieved supervisor. The board of State tax commissioners "shall have the right" to order an investigation of the matters set forth in the petition and if it shall decide that the determination and equalization made by the board of supervisors is correct "no further action shall be taken." However, if it decides that the valuations have been improperly equalized "it shall proceed to make such deductions from, or additions to the valuations of the respective townships, wards or cities as may be deemed proper," which shall be final and binding upon the board of supervisors.

The first question that presents itself to us is the right of plaintiff cities and the ten taxpayers to bring these suits. We think there can be no question as to the right of an individual taxpayer to bring suit for relief against his own assessment. In *Peninsula*

*Iron & Lumber Co.* v. *Township of Crystal Falls,* 60 Mich. 510, we held that an assessment against lands for taxation may be assailed in court if it can be shown that the supervisor or board of review acted fraudulently. But in the cases at bar there is no authority shown by the individual taxpayers to act for other taxpayers of the county whose relief, if any, is against the assessments made on their own property only.

The next question is, whether the plaintiff cities have the right to bring this action. Plaintiffs predicate their right upon the holding in *City of Saginaw* v. *Consumers' Power Co.,* 213 Mich. 460, 482. In that case we said: "We think the city as representative of its inhabitants may maintain this bill in their behalf and thus avoid a multiplicity of suits." But this right is conditioned upon the principle adopted by this court in *Merrill* v. *Humphrey, Auditor-General,* 24 Mich. 170, namely, that in order to restrain the collection of taxes because of excessiveness, the party so complaining must first pay or offer to pay the correct amount of the tax. This principle has been affirmed in the following cases: *Palmer* v. *Township of Napoleon,* 16 Mich. 176; *Connors* v. *City of Detroit,* 41 Mich. 128; *Sinclair* v. *Learned,* 51 Mich. 335; and *Lau* v. *Stack,* 269 Mich. 396.

It is fundamental law that plaintiff cities would have no authority to pay the whole or a part of an individual taxpayer's taxes in order to place itself in a position to take advantage of the above rule. If the individual taxpayers are to obtain any relief they also must comply with the above rule, and not having done so are now precluded from bringing this action.

The only remaining question that we find necessary to decide is the effect of the adopting of the re-

port of the equalization committee by the board of supervisors. We held in *Boyce* v. *Sebring,* 66 Mich. 210, that the adoption of the committee's report by the board of supervisors was the action of the board.

Other questions were raised and briefed, but we find it unnecessary to decide them.

Orders affirmed, no costs will be taxed as a public question is involved.

POTTER, C. J., and NELSON SHARPE, NORTH, FEAD, WIEST, BUTZEL, and BUSHNELL, JJ., concurred.

## ON REHEARING.

FEAD, J. In the original consideration of this case we apparently had too much in mind the ultimate relief sought by plaintiffs, reduction of their taxes. Ordinarily, that is what such litigants want. But these plaintiffs insist upon narrowing the case to the specific relief prayed by them. Assuming (although it is doubtful) that plaintiffs sufficiently have alleged fraud in the equalization of the county, nevertheless the bills must be dismissed.

The bills pray that the valuations fixed by the board of supervisors and State tax commission be decreed void and be cancelled; that the taxes assessed on such equalization be cancelled and the properties of the taxpayers be freed from any lien thereof; that the city assessors of plaintiff cities be restrained from assessing taxes then or thereafter apportioned to the cities on such equalization; that the State and county taxes be assessed after an equalization is made in accordance with law and on the true cash value; that the board of supervisors be mandatorily enjoined to reconvene and make a legal equalization; and for general relief.

The bills were filed November 2, 1934. The law provides for completion of the assessment, delivery of the tax roll to the treasurer for collection, and attachment of lien on real estate, on December 1st.[*] Plaintiffs, therefore, seek to halt the tax proceedings in mid air and to require part of them to be done over again.

Counsel do not suggest how the court could cancel taxes not yet assessed when the bills were filed.

Nor can the court maintain the *status quo* and keep the assessment suspended as of the filing of the bill by injunction because 1 Comp. Laws 1929, § 3507, reads:

"No injunction shall issue to stay proceedings for the assessment or collection of taxes under this act."

The evil sought to be remedied by this provision is evident. In *Eddy* v. *Township of Lee,* 73 Mich. 123, 131, it was said:

"If the tax is illegal and void for the neglect of the board of supervisors to equalize the assessment rolls, and to apportion the taxes, such illegality affects all the tax rolls in the county, and the whole State, county, township, and highway taxes in the county may be enjoined from collection,—the State deprived of its necessary share to meet the appropriations for civil, educational, and administrative purposes, the county, of its necessary means to support its poor, enforce the criminal laws, and pay its obligations, and the townships and school districts would be left with no means to defray the ordinary expenses of such public *quasi* corporations."

The court also pointed out that payment of taxes under protest and their recovery, 1 Comp. Laws

---

[*] See 1 Comp. Laws 1929, § 3429.—Reporter.

1929, § 3444,* afford a remedy to the taxpayer which, whether exclusive or not, is sufficient to justify legislative denial of the injunctive remedy.

In *Miller* v. *Grandy,* 13 Mich. 540, 547, the court said:

"Before the extraordinary relief of an injunction against the action of municipal boards, in their public capacity, can be granted, where it will at all interfere with their strictly public functions, a court of equity must have full allegations of the precise rights which will be injured, and must see that without its aid an injury will result which cannot be adequately remedied otherwise. When such a case arises, public considerations may interpose serious obstacles, which may even then prevent interference. We think that, in the present case, there are some fatal obstacles to relief, on the theory of the bill now under consideration.

"Without undertaking to go into any elaborate discussion of all the questions which might arise, we feel confident that no case can be found which recognizes any propriety in enjoining the preliminary proceedings, in advance of the actual levy of a tax, on either personalty or realty. Apart from the palpable difficulty of determining in advance whether the complainant will be in a condition to be injured when the tax is assessed, it is always to be remembered that, under our system, taxes must be provided for at regular times, and by annual and somewhat rapid proceedings. They are assessed against entire districts at once; and the staying of proceedings, on behalf of one person, stops the revenue system of the entire community. Before a suit in chancery could be regularly brought to a hearing on proofs in the circuit court (to say nothing of the hearing on appeal), the time for action by the local

* 1 Comp. Laws 1929, § 3444, has been amended by Act No. 32, Pub. Acts 1931, and Act No. 54, Pub. Acts 1935.—Reporter.

officers would have gone by. No court could ever be justified in such an interference with the necessary course of government. After a tax has been assessed and becomes collectible, each man's share becomes severable from the rest; and delaying its payment will not necessarily operate upon his neighbors. When his land is in danger of being affected by a cloud upon its title, a sufficiently clear case will then enable him to be relieved: *Palmer* v. *Rich,* 12 Mich. 414. But until that danger arises he cannot ask protection; and where nothing but personalty is concerned, the circumstances must be very peculiar which will warrant equitable interference. These principles are familiar, and rest on good sense and sound policy.''

While these words were used with reference to injunctions, the same considerations of public necessity forbid like relief in equity even though it be in another form and called by a different name.

Cognizance by equity of a suit of this kind could not fail to work grave injury, both to the public through diminished or extinguished tax collections and to taxpayers who should pay voluntarily and thus be without right to recover back. The whole tax law as to assessment, collection, return and sale could be thrown out of joint by any taxpayer who wanted to bring action. In view of the fact that most property has not a definite cash value but its worth is largely a matter of judgment, grounds for such a suit would not be hard to find, particularly if general allegations of fraud or excessive assessment be held sufficient. It is unnecessary to point out that equity, by taking jurisdiction in this sort of an action, would furnish a weapon by which unscrupulous parties could receive favorable tax consideration on threat of suit.

We need not discuss the power of equity to require a new equalization and a new assessment after a tax once has been assessed and at least partially collected under the command of positive law, in a case where the court had no power to maintain the *status quo* and prohibit completion of the assessment and the collection by injunctive process. Nor, if such power be found, how it could protect taxpayers, who had paid voluntarily, from a second charge.

On general principle, the proposition seems very simple. A taxpayer is not injured until the tax has been assessed and has become a debt or a lien. When that occurs, he has a remedy at law, and, in a proper case, in equity, to conserve his rights. Prevention of anticipated injury to a taxpayer raises no equities in him as compared to the public necessity against disruption of the tax system and for the orderly raising of public revenues.

The remedy established by statute, by way of appeal to the tax commission from equalization by the board of supervisors, is exclusive and, until the tax has been assessed and become a debt or a lien, a court of equity has no jurisdiction to stay or set aside any of the proceedings.

NORTH, C. J., and BUTZEL and BUSHNELL, JJ., concurred with FEAD, J.

EDWARD M. SHARPE, J. The facts in these cases are reported in our former opinion where we held that a city as the representative of its inhabitants may bring suit in a chancery court in order to avoid a multiplicity of suits, *City of Saginaw* v. *Consumers' Power Co.,* 213 Mich. 460, but that this right on the part of the city is conditioned upon the principle enunciated by our court in *Merrill* v. *Humph-*

*rey, Auditor-General,* 24 Mich. 170, namely, that in order to restrain the collection of taxes because of excessiveness, the party complaining must first pay or offer to pay the correct amount of the tax. We also held that the cities could not comply with this rule inasmuch as they have no authority to pay any part of an individual taxpayer's taxes.

The record shows that, in accordance with the provisions of 1 Comp. Laws 1929, § 3412, prior to June 1, 1934, the assessment roll for the 1934 and 1935 tax was completed by the several assessing officers as follows: city of Bloomfield Hills total assessment, $4,271,460; city of Birmingham total assessment, $12,649,653; city of Pontiac total assessment, $55,740,685; city of Royal Oak total assessment, $17,842,255.

At the June session of the board of supervisors of Oakland county for the year 1934, the value of real property in the city of Birmingham was increased from $11,892,010 to $15,098,828.62; in the city of Bloomfield Hills from $4,186,800 to $5,946,-447.02; in the city of Royal Oak from $15,989,065 to $17,791,802.99 and in the city of Pontiac from $43,-795,810 to $54,911,293.72.

Following this equalization by the board of supervisors, appeals were taken to the State tax commission by the cities of Bloomfield Hills and Birmingham in accordance with the provisions of 1 Comp. Laws 1929, § 3422. These appeals resulted in an order by the State tax commission directed to the board of supervisors to reconvene at the city of Pontiac for the purpose of giving a hearing relative to the appeals; and as a result of this meeting the appeals of petitioners were dismissed and no changes made in the valuations as had previously been determined by the board of supervisors. In their bills

of complaint, plaintiffs charge fraud in that the assessment rolls prepared by the cities of Royal Oak and Pontiac did not show the true cash value of the taxable property; that there was an omission from the assessment rolls of Royal Oak and Pontiac of a large amount of taxable personal property; that the board of supervisors, in equalizing the assessment rolls, arbitrarily increased the assessments on the taxable property in Bloomfield Hills and Birmingham without due regard to its actual cash value; that the State tax commission denied to property owners interested a right to a hearing upon the matters set up in their appeals; and that the equalization of values in certain localities was based upon the financial ability of taxpayers to pay.

The relief asked for in plaintiffs' petitions is that the valuations as fixed by the board of supervisors and State tax commission upon the properties in the cities of Pontiac, Royal Oak, Bloomfield Hills and Birmingham be decreed by this court to be null and void as a basis for the assessment and collection of taxes for the fiscal year 1934–1935.

In *Sloman-Polk Co.* v. *City of Detroit,* 261 Mich. 689 (87 A. L. R. 1294), we said:

"The law requires the assessment to be made at true cash value. * * * Intentional overassessment is fraud. A court of equity has jurisdiction to relieve against such fraud."

And in *McDonald* v. *City of Escanaba,* 62 Mich. 555, we said:

"The question of valuation is one which rests on the judgment of the board, and not upon the judgment of the judiciary."

In the case at bar, one of plaintiffs' allegations is that in the cities of Pontiac and Royal Oak the

properties were not assessed at their true cash value. Such a general charge cannot be the basis for fraud without a showing of facts to substantiate the allegations made. We recognize the fact that, during the past few years, it has been difficult to determine the actual cash value of any particular piece of real estate. Nor do the bills of complaint show what personal properties in Pontiac were omitted from the assessment roll by the assessing officers.

We are not impressed with the allegation that the State tax commission met and arbitrarily refused to hear evidence. Section 3422, 1 Comp. Laws 1929, provides:

"The said board of State tax commissioners shall have the right to order the said board of supervisors to reconvene and to cause the assessment rolls of said county to be brought before it, and it may summon the several supervisors of said county before it to give evidence in relation to said equalization and may take such further action and may make such further investigation in the premises as it may deem necessary."

We are of the opinion that the manner of conducting this investigation by the State tax commission is a matter that lies wholly within its power. The failure of plaintiffs to set forth in their bills of complaint facts substantiating the general allegations and conclusions of fraud is fatal to their cause.

The orders of the trial court are affirmed. No costs will be taxed as a public question is involved.

WIEST, J (*dissenting*). Upon rehearing and reconsideration I think that plaintiffs should have opportunity, at a hearing on the merits, to substantiate, if they can, the charges made in the bill herein.

The bill was dismissed on special motion and, upon this review, we must accept, as true, every

averment well pleaded therein. Mere conclusions of the pleader, without disclosure of justifying grounds, will not suffice. On the other hand a recital of the evidence is not required.

The allegations in the bill are quite general in nature and, therefore, near the line of inadequate pleading, but there are specific allegations of administrative acts, constituting legal fraud and operative to the injury of plaintiffs. The bill covers 30 pages of the printed record.

If the following excerpts, taken from the bill of complaint, can be substantiated they command judicial attention. Whether they can be so established is not now before us, for defendants have raised no such issue.

We quote from the bill:

"20. That in making up said assessment rolls the said cities of Pontiac and Royal Oak did not assess the real property located therein and subject to taxation, at its true cash value, but at values substantially lower than the real cash value thereof, and that said action was deliberate, intentional with knowledge of the facts, and for the purpose of reducing the taxes in the cities of Pontiac and Royal Oak for the benefit of property owners therein, so that other municipal units in said county of Oakland, and specifically the taxpayers of Bloomfield Hills and Birmingham would pay a larger percentage of said taxes than they should be called upon to pay, and that said action constituted a fraud upon the taxpayers of the cities of Birmingham and Bloomfield Hills.

"21. That said assessing officers of the said cities of Pontiac and Royal Oak designedly left off the assessment rolls large amounts of personal property properly taxable and which if placed on the tax rolls would have increased the value of the taxable property in the city of Pontiac and city of Royal

Oak by many millions of dollars, that the omission of said personal property from said tax rolls was deliberate, intentional and by design and for the purpose of shifting the burden of taxation from the property owners subject to taxation in the cities of Pontiac and Royal Oak to the property owners in other sections of said Oakland county, and specifically to the property owners subject to taxation in the cities of Birmingham and Bloomfield Hills, and was a fraud upon said property owners. * * *

"26. That said board of supervisors well knew that the said city of Pontiac had designedly omitted from its assessment roll personal property of the value of upwards of $50,000,000 and that the effect thereof would be to substantially increase the amount of taxes to be paid by the taxpayers of Birmingham and Bloomfield Hills, and it was the duty of said board of supervisors to compel the said city of Pontiac by appropriate action to place said personal property on its assessment rolls, but that said board of supervisors did not perform its duties in this respect, substantially ignored the fraudulent action of said city of Pontiac in undervaluing the real property located therein and in omitting from its assessment roll personal property of great value, did not increase the values placed upon said real estate in the city of Pontiac to its true cash value, took no steps to compel the said city of Pontiac to assess all of the taxable personal property located in said city of Pontiac and by its actions co-operated in the plan to compel the taxpayers of Birmingham and Bloomfield Hills to pay more than their proportionate share of the State and county taxes for the fiscal year 1934–1935. * * *

"29. That it was contemplated by the provisions of 1 Comp. Laws 1929, § 3422, and the amendments thereto that said State tax commission should in good faith investigate the matters set forth in said petitions to determine whether or not the equaliza-

tion complained of was unfair, unjust, inequitable or discriminatory, and for the purpose to order said board of supervisors to reconvene and cause the assessment rolls of said county to be brought before it and to summon the several supervisors of said county board before it to give evidence in relation to said equalization and to take such further action and make such further investigation in the premises as might be deemed necessary, but that said State tax commission at the meeting held in accordance with the provisions of the official order, exhibit B, arbitrarily refused to hear evidence upon said petition or to allow said petitioner, the city of Birmingham, through its legally delegated representatives, to present any testimony to substantiate the allegations of its said appeal, refused the said petitioner, the city of Birmingham, plaintiff herein, the opportunity of examining the various members of the board of supervisors, or any of them, or the assessment rolls of their respective townships, wards or cities, as the case might be; did not itself examine into the values placed upon the properties in the cities of Pontiac, Birmingham, Royal Oak and Bloomfield Hills, and other units of the county of Oakland by said supervisors, and proceeded arbitrarily without any hearing and after specifically denying to the said city of Birmingham its constitutional right to be heard and to present such testimony as might be necessary to establish the allegations of its said appeal, to dismiss said appeal, making no changes in the values placed by said supervisors on taxable properties in the cities of Pontiac, Birmingham, Bloomfield Hills and Royal Oak. * * *

"43. (j) That the said board of supervisors of the county of Oakland and the State tax commission in the valuations placed upon all parcels of property upon the assessment roll in said cities of Birmingham and Bloomfield Hills, placed valuations thereon far in excess of the true cash value of said proper-

ties, and that its action in the premises operated as a legal fraud not only on the rights of these plaintiffs but upon all of the property owners of the said cities of Birmingham and Bloomfield Hills; that the action of the said board of supervisors of the county of Oakland and said State tax commission in the premises was an abuse of the discretionary power vested in said commission and has resulted in gross discrimination as to said property owners in the cities of Birmingham and Bloomfield Hills, is excessive, burdensome, unequal and fraudulent. * * *

"(1) That the acts of the defendants, the board of supervisors of the county of Oakland and the State tax commission in fixing the said excessive and unlawful valuations upon said properties violate the fourteenth amendment of the Constitution of the United States of America in that they abridge the privileges, rights and immunities of citizens of the United States of America and deprive to them the equal protection of the law."

In *Sloman-Polk Co.* v. *City of Detroit,* 261 Mich. 689 (87 A. L. R. 1294), we held:

"Intentional overassessment is fraud. A court of equity has jurisdiction to relieve against such fraud."

The overassessment in that case was general and, therefore, held no injury peculiar to the plaintiff therein.

In the case at bar it is alleged that intentional underassessment in one part of the equalization district was planned to, and did, bring overassessment in another part thereof, and those injured thereby were denied their right to be heard in season by the board having power and duty of correction.

I do not entertain the view that assessing officers may so act and shift the burden of taxation from

one part of the county to another and render helpless the taxpayers discriminated against.

This is not a proceeding in the nature of mandamus nor review in the nature of certiorari but a direct and seasonable effort to preserve rights against an alleged arbitrary exercise of the taxing power.

The decree, dismissing the bill, should be reversed and the case remanded to the circuit court for hearing upon the merits.

TOY, J., did not sit. POTTER, J., took no part in this decision.